# THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| INTERNATIONAL FIDELITY<br>INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>SOLUTIONS TO EVERY PROBLEM,<br>INC., BASIL A. SKELTON, JEFFREY L.<br>WOOD, IDA SALISA WOOD,<br>NICKAJACK PROPERTIES, LLC, and<br>COOL SPORTS, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:12-CV-37<br>JURY DEMAND |

## ANSWER TO COMPLAINT FOR INDEMNITY AND EQUITABLE RELIEF AND COUNTERCLAIM OF DEFENDANT, SOLUTIONS TO EVERY PROBLEM, INC. ("STEP")

Come the Defendants, Solutions to Every Problem, Inc. ("STEP"), Basil A. Skelton (Individually and in his capacity as Trustee of Basil A. Skelton's Living Trust), Jeffrey L. Wood, Ida Salisa Wood, Nickajack Properties, LLC, and Cool Sports, LLC (collectively "Defendants"), and for Answer to the Complaint filed against them in this cause, and for Counterclaim, state as follows:

## AFFIRMATIVE DEFENSES

1. Defendants aver that the Complaint filed by International Fidelity Insurance Company ("IFIC") fails to state a cause of action against them for which relief can be granted. The responses set forth below are incorporated herein by reference. Defendants further aver that the Plaintiff IFIC is a defendant in that suit filed by STEP in the Superior Court of Fulton

County, Georgia, bearing docket number 2011-CV-209501 (the "Georgia suit") filed on December 21, 2011. Defendants aver that the claims Plaintiff asserts in this cause against STEP are a compulsory counterclaim in the Georgia suit that was already pending when Plaintiff filed suit in this Court. Defendants aver that the Plaintiff's complaint against STEP should be dismissed as a result of the prior suit pending and the compulsory counterclaim filed therein by Plaintiff, a defendant in the Georgia suit. A copy of STEP's complaint in the Georgia suit is attached as **Exhibit A** and IFIC's answer and counterclaim in the Georgia suit is attached hereto as **Exhibit B**.

2. Defendants rely upon Tennessee's doctrine of comparative fault to the extent applicable to this cause. Defendants aver that in the event and to the extent that the Plaintiff, or nonparties named in this cause in any answer filed by any Defendant, are shown to the Court to have fault in causing any damages for which the Plaintiff is entitled to recover, Plaintiff's recovery for any fault of these Defendants, which is denied, is thereby barred or mitigated. Defendants aver that they have had insufficient opportunity at this time to investigate the Plaintiff's claims in this cause. Defendants reserve leave herein to show to the Court the fault of the Plaintiff, any other parties added to this suit or specifically named nonparties in an Answer filed by these Defendants or any other party and whom the proof shows to be at fault for any damages incurred by the Plaintiff and for which recovery is sought against these Defendants in this cause. Defendants aver that the Plaintiff has directly caused the damages that it allegedly has incurred by failing to investigate adequately and properly the alleged default of STEP, by entering into the "Takeover" Agreement without adequate and proper justification and without proper notice to and consultation with the Defendants, and by breaching the duty of good faith and fair dealing it owed to the Defendants.

3. Defendants aver that Plaintiff IFIC breached the Indemnity Agreement as set forth in Exhibit A attached hereto and incorporated by reference herein. Defendants aver that IFIC's breaches of that Agreement were material and occurred prior to any alleged breach of the Indemnity Agreement by any of the Defendants.

4. Defendants deny that STEP or the Defendants have breached any contract in any manner proximately, directly, or foreseeably causing any damages to Plaintiff. A copy of STEP's contract with the project owner is in the possession of the parties and is attached to the IFIC Complaint as Exhibit 3 as referenced in paragraph 23 of the IFIC complaint.

5. Defendants rely upon the defenses of waiver, laches, and estoppel to the extent applicable to the facts of this cause.

6. Defendants aver that the Plaintiff had a duty to mitigate damages and that the failure of the Plaintiff to do so bars all claims herein for all such damages that the Plaintiff failed to mitigate.

7. The amounts owed by IFIC to STEP are in excess of any amount STEP and the Indemnitors would otherwise owe to IFIC. The Defendants assert the defenses of setoff and/or recoupment.

8. All of IFIC's claims against the Defendants were waived and are barred by virtue of IFIC's acting as a volunteer and undertaking to perform work and to incur costs which IFIC had no legal or contractual obligation to undertake under the Performance-Payment Bond or otherwise, and no right to be indemnified for under the Indemnity Agreement. These actions by IFIC included, but are not necessarily limited to, IFIC's entering into and performing the so-called "Takeover Agreement" without the Defendants' consent and over STEP's objections and

IFIC's making payments to STEP's subcontractors which STEP had no contractual obligation to make.

9. IFIC's claims against the Defendants are barred by the fact that STEP was not paid the money it was owed by the owner and was improperly terminated by the owner, causing IFIC to have no obligation under the Performance-Payment Bond or otherwise to complete the Bonded Contract or to pay STEP's subcontractors.

10. IFIC's claims against the Defendants are barred by the fact that IFIC and the owner, improperly and without STEP's permission, took STEP's unpaid contract balance under the Bonded Contract, which rightfully belonged to STEP, and converted it to their own use.

11. IFIC's claims for equitable relief are barred by the doctrine of unclean hands and by the existence of an adequate remedy at law.

12. IFIC's claims against the Defendants are barred by the lack of proper notice and the nonoccurrence of one or more conditions precedent.

13. Defendant STEP asserts, as an affirmative defense, the doctrine of forum non conveniens, based upon the facts summarized herein, and asserts that this Court should not entertain IFIC's claims against STEP under the doctrine of forum non conveniens and due to the prior pending Georgia suit.

## RESPONSE TO COMPLAINT

1. Defendants have insufficient information to admit or deny the allegations of Paragraph 1 of the Complaint, and therefore deny same and demand strict proof thereof.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted on information and belief except that the Court does not have, or should not exercise, jurisdiction and venue as to IFIC's claims against STEP due to the prior pending Georgia suit. The Defendants further aver that the project is located in Georgia, that many of the key witnesses (including representatives of the project owner, architect, and the US Department of Housing and Urban Development) reside in Georgia and are not subject to the subpoena power of this Court for trial attendance due the distance from this court that they reside and do business, and that this Court is not convenient for the litigation of the claims and issues between STEP and IFIC that are asserted in the IFIC Complaint and this Answer and contingent Counterclaim. With regard to the IFIC claims against STEP, the Defendants also invoke the doctrine of forum non conveniens.

9. Admitted on information and belief except that the Court does not have, or should not exercise, jurisdiction as to IFIC's claims against STEP due to the prior pending Georgia suit.

10. Admitted on information and belief except that the Court does not have, or should not exercise, jurisdiction as to IFIC's claims against STEP due to the prior pending Georgia suit.

11. Denied as to Defendant STEP based on the doctrine of forum non conveniens and due to the prior pending Georgia suit; admitted, on information and belief, as to the other Defendants.

12. Admitted.

13. The Defendants admit that the existence of the indemnity agreement and aver that it speaks for itself.

14. The Defendants admit that the existence of the indemnity agreement and aver that it speaks for itself.

15. The Defendants admit the existence of the indemnity agreement and aver that it speaks for itself.

16. The Defendants admit the existence of the indemnity agreement and aver that it speaks for itself.

17. The Defendants admit that the existence of the indemnity agreement and aver that it speaks for itself.

18. The Defendants admit that the existence of the indemnity agreement and aver that it speaks for itself.

19. The Defendants admit that the existence of the indemnity agreement and aver that it speaks for itself.

20. The Defendants admit that the existence of the indemnity agreement and aver that it speaks for itself.

21. The Defendants admit that the existence of the indemnity agreement and aver that it speaks for itself.

22. The Defendants admit that IFIC issued a performance-payment bond on behalf of STEP in the penal sum of $3,299,036.06. Defendants have insufficient information to admit or deny what IFIC considered as inducements to issue the bond.

23. Admitted.

24. The Defendants admit that the "Bonded Contract" relates to the construction of a senior housing community in Albany, Georgia. Defendants admit that the Bonded Contract was not completed by the extended contract completion date, but aver that the fault for the extended

6

construction time is the result of actions, acts, errors and/or omissions of the project owner and/or the project architect. The allegations set forth in STEP's Complaint filed in the Georgia suit and attached as Exhibit 17 to IFIC's Complaint in this cause and as **Exhibit A** to this Answer are incorporated herein by reference.

25. Admitted.

26. The Defendants admit the existence of the letter attached as Exhibit 4 to the Complaint. The Defendants deny that the Exhibit 4 letter is factually accurate. Furthermore, the Defendants aver that items listed in the Exhibit 4 letter either were corrected by Defendants or were not defective as alleged in the Exhibit 4 letter.

27. The Defendants deny the allegations of Paragraph 27 of the Complaint as stated in the Complaint. The Defendants admit that construction of the project, which was substantially completed by November 13, 2010, was not fully completed by January 19, 2010, but aver that the delay in completion was caused by the project owner, Dalewood, and the project architect, not STEP. The Defendants admit that Dalewood allowed STEP to continue performing work under the Bonded Contract until January 26, 2011, when Dalewood wrongfully terminated the contract and improperly evicted STEP from the project site.

28. The Defendants admit the existence of the letter attached as Exhibit 5 to the Complaint, which speaks for itself. The Defendants admit on information and belief that, upon receipt of the Exhibit 5 letter, IFIC began investigating the Hatcher claim. The Defendants further admit that IFIC requested information from STEP and the indemnitors concerning the Hatcher claim, and aver that STEP provided IFIC the requested information. The Defendants aver that STEP and Hatcher had a subcontract agreement that included the following provision at section 11.3: "The Contractor shall pay the Subcontractor each progress payment no later than

seven working days after the Contractor receives payment from the Owner." The Defendants further aver that Dalewood had not paid STEP for all of Hatcher's work and that, pursuant to the above provision, STEP had no contractual obligation to pay Hatcher's claim.

29. The Defendants admit the existence of the Hatcher Complaint attached as Exhibit 6 to the Complaint and admit that Hatcher filed suit against STEP and IFIC. The Defendants further admit that IFIC tendered its defense of Hatcher's claim to STEP and the indemnitors and that STEP provided a defense for itself and for IFIC in response to the Hatcher claim.

30. The Defendants admit the existence of the letter attached as Exhibit 7 to the Complaint, which speaks for itself. The Defendants admit on information and belief that IFIC investigated the Select Tel Systems, Inc. ("STS") claim reflected in Exhibit 7 to the Complaint. The Defendants admit that they were requested to provide IFIC information relative to the STS claim and aver that they did provide such information.

31. The Defendants admit the existence of the letter attached as Exhibit 8 to the Complaint, which letter speaks for itself. The Defendants deny that STEP was in default as alleged in the Exhibit 8 letter.

32. The Defendants deny that STEP was ever in default on the Bonded Contract, but admit that, while STEP was in the process of performing "punchlist" work that had been identified for STEP by the project architect, Dalewood, improperly and without justification, terminated the Bonded Contract and prevented STEP from completing it by evicting STEP from the project site. STEP avers that it was not provided with an adequate and fair opportunity to complete the Bonded Contract and further avers that STEP was wrongfully terminated from the Dalewood project.

33. Defendants admit the existence of a letter attached as Exhibit 9 to the Complaint, which letter speaks for itself, but deny that STEP failed to respond to it. Defendants aver that STEP provided reasonable responses to this letter. Defendants further aver that IFIC failed to adequately and properly investigate the owner's claims and, in particular, failed to obtain, utilize, or otherwise evaluate information possessed by the United States Department of Housing and Urban Development ("HUD").

34. The Defendants admit the existence of the letter attached as Exhibit 10 to the Complaint, which letter speaks for itself. The Defendants admit on information and belief that IFIC made some investigation of the Pressley Electric Service, Inc. ("PES") claim and further aver that STEP provided IFIC with information related to this claim.

35. The Defendants admit the existence of the letter attached as Exhibit 11 of the Complaint and aver that this letter speaks for itself. Defendants aver that STEP provided information to IFIC concerning the owner's claims, and the Defendants aver that it was not necessary to provide IFIC with formal responses as STEP was able to provide IFIC with pertinent information informally and did so.

36. The Defendants admit on information and belief that IFIC retained Gary Bierhalter of Bierhalter & Associates, Inc. The Defendants have insufficient information to admit or deny Bierhalter's scope or terms of services for IFIC.

37. The Defendants admit the existence of the STS Complaint attached as Exhibit 12 to the IFIC Complaint and aver that the Complaint speaks for itself. The Defendants admit that IFIC requested information concerning the STS claims and aver that STEP provided such information. The Defendants further aver that STEP provided a defense to IFIC in the STS litigation.

38. The Defendants admit the existence of the PES Complaint attached as Exhibit 13 to the IFIC Complaint. They aver that this Complaint speaks for itself. The Defendants aver that STEP provided IFIC a defense to the PES Complaint.

39. The Defendants admit the allegations of Paragraph 39 of the Complaint.

40. Defendants admit the existence of the letter attached as Exhibit 14 to the Complaint. They aver that the funds represented by the referenced check were used to settle the Hatcher claim. The Defendants further aver that the Exhibit 14 letter speaks for itself.

41. The Defendants admit that a meeting occurred on July 12, 2011, as alleged in Paragraph 41 of the Complaint. Defendants deny that they have failed to provide subsequent information or documentation as alleged in Paragraph 41 of the Complaint.

42. The Defendants deny that STEP has failed to provide pertinent information related to the Dalewood claims. The Defendants have insufficient information to admit or deny the other allegations of Paragraph 42 of the Complaint, and therefore deny same.

43. Defendants admit on information and belief that IFIC, Dalewood, and HUD entered into a "takeover agreement" dated November 21, 2011. The Defendants admit on information and belief that a copy of that agreement is attached to the IFIC Complaint as Exhibit 15. The Defendants have insufficient information to admit or deny what IFIC has done with regard to STEP's subcontractors and/or suppliers concerning a negotiated scope of work (the alleged "Remaining Work") or the other allegations of Paragraph 43 of the Complaint, and therefore deny same.

44. The Defendants have insufficient information to admit or deny the allegations of Paragraph 44 of the Complaint and therefore deny same.

45. The allegations of Paragraph 45 of the Complaint concerning the STS lawsuit are admitted on information and belief.

46. The Defendants admit on information and belief the allegations of Paragraph 46 of the IFIC Complaint.

47. The Defendants have insufficient information to admit or deny the allegations of Paragraph 47 of the Complaint and therefore deny same.

48. The Defendants admit the existence of the letter attached as Exhibit 16 to the Complaint and aver that this letter speaks for itself. The Defendants deny that they owe IFIC the amount of $336,000, or any other amount.

49. The Defendants admit that they did not voluntarily deposit any collateral with IFIC in response to IFIC's demand, but aver that IFIC has, in effect - improperly and without justification or STEP's permission - helped itself to funds rightfully belonging to Defendant STEP by taking STEP's unpaid contract balance under the Bonded Contract and converting it to IFIC's and the owner's own uses. The Defendants deny that they owe IFIC any amount and aver that IFIC and the owner owe Defendants damages in excess of any money the Defendants would otherwise owe IFIC.

50. The Defendants admit that IFIC has demanded that IFIC be reimbursed for the amount IFIC paid to settle the Hatcher claim. The Defendants aver that the amount IFIC owes to STEP far exceeds that amount, and that the Defendants are entitled to offset the damages sought by STEP in the STEP counterclaim and in the Georgia suit against any amount the Defendants would otherwise owe IFIC as a result of the Hatcher settlement.

51. The Defendants admit that they have not voluntarily paid any money to IFIC in response to IFIC's demand, but deny that they owe IFIC any amount, and aver that IFIC has, in

effect - improperly and without justification or STEP's permission - helped itself to funds rightfully belonging to Defendant STEP by taking STEP's unpaid contract balance under the Bonded Contract and converting it to IFIC's and the owner's own uses. The Defendants deny that they owe IFIC any amount and aver that IFIC and the owner owe Defendants damages in excess of any money the Defendants would otherwise owe IFIC.

52. The Defendants admit that STEP has filed suit against IFIC and the project owner, Dalewood, in the Superior Court of Fulton County, Georgia, as alleged in Paragraph 52 of the IFIC Complaint. They further admit that a copy of that Complaint is attached as Exhibit 17 to the IFIC Complaint in this cause and as **Exhibit A** to this Answer. The Defendants incorporate herein by reference the allegations contained in STEP's Complaint in the Georgia suit and deny the remaining allegations of Paragraph 52 and specificallly deny that they are attempting to circumvent any obligations.

53. The Defendants have already responded to the allegations of Paragraph 53 of the Complaint and incorporate those responses herein.

54. The Defendants deny the allegations of Paragraph 54 of the Complaint.

55. The Defendants deny the allegations of Paragraph 55 of the Complaint and deny that they are obligated to deposit any amount with IFIC.

56. The Defendants admit the existence of the indemnity agreement as alleged in Paragraph 56 of the Complaint. The Defendants deny, however, that they are obligated to indemnify IFIC under the indemnity agreement and deny all other allegations in Paragraph 56.

57. The Defendants have insufficient information to admit or deny the allegations of Paragraph 57 of the Complaint and therefore deny same.

58. The Defendants admit that IFIC has demanded that the Defendants deposit collateral with IFIC in the amount of $336,000 and that the Defendants have not done so. The Defendants deny, however, that they owe IFIC this amount, or that they are obligated to deposit this amount or any other amount.

59. The Defendants admit the allegations of Paragraph 59 of the Complaint, except that they deny that they are obligated to deposit any amount with IFIC and deny that they have breached the indemnity agreement.

60. The Defendants deny the allegations of Paragraph 60 of the IFIC Complaint.

61. The Defendants deny the allegations of Paragraph 61 of the IFIC Complaint.

62. The Defendants have already responded to Paragraph 62 of the IFIC Complaint and incorporate those responses.

63. The Defendants deny the allegations of Paragraph 63 of the IFIC Complaint.

64. The Defendants deny the allegations of Paragraph 64 of the IFIC Complaint.

65. The Defendants have already responded to Paragraph 65 of the IFIC Complaint.

66. The Defendants deny the allegations of Paragraph 66 of the IFIC Complaint.

67. The Defendants have already responded to the allegations of Paragraph 67 of the IFIC Complaint and incorporate those responses.

68. The Defendants deny the allegations of Paragraph 68 of the IFIC Complaint.

69. The Defendants have already responded to the allegations of Paragraph 69 of the IFIC Complaint and incorporate those responses.

70. The Defendants deny the allegations of Paragraph 70 of the IFIC Complaint.

71. As set forth in the STEP Complaint filed in the Georgia suit attached as Exhibit 17 to the IFIC Complaint in this cause and as Exhibit A to this Answer and incorporated by

reference herein, the Defendants aver that IFIC owed STEP a duty of good faith and fair dealing in administering the payment and performance bonds provided by IFIC on the project and in dealing with the claims of the project owner, Dalewood. The Defendants deny that STEP or any of the Defendants ever consented to the so-called "Takeover Agreement" and, in fact aver that STEP expressly objected to IFIC's entry into a takeover agreement with Dalewood. The Defendants aver that IFIC's entry into the takeover agreement with Dalewood over the objection of STEP and because of IFIC's inadequate, improper, and ineffective investigation of the Dalewood claims constituted a breach of IFIC's duties under the indemnity agreement and breached IFIC's duty of good faith and fair dealing towards STEP and the Indemnitors.

72. The Defendants aver that the project architect never certified that sufficient cause existed to justify Dalewood's termination of STEP's employment on the project as required by the project general conditions, AIA A201-1997, at section 14.2.2. The Defendants also aver that the grounds for termination set forth in section 14.2.1 of the general conditions did not exist when STEP's employment was terminated. The Defendants further aver that STEP's termination without the architect's certification of sufficient cause and without any proper basis for termination was wrongful and improper and that IFIC failed to investigate adequately and properly whether the project architect had certified sufficient cause for STEP's termination and whether any grounds for termination existed and/or simply ignored that the termination was improper. The Defendants aver that IFIC's failure and/or refusal to consider or determine whether the architect had certified sufficient cause for STEP's termination and whether a proper basis for termination existed breached IFIC's duty to deal fairly and in good faith with STEP and the indemnitors.

73. The Defendants further aver, on information and belief, that IFIC failed to adequately and properly investigate the requirements of the approved HUD plans for the project, to consider changes to the project design which were made by HUD and/or the project architect, to properly consult with HUD and the project architect, to ascertain and properly consider the status of the work at the time STEP was improperly terminated, to properly take into account the damage to and deterioration of the project which occurred after STEP was wrongfully terminated and evicted from the site and while the project was in the owner's custody and control, and to properly consider available information and documentation regarding the project. The Defendants aver that IFIC's failure and/or refusal to do these things resulted in or contributed to IFIC's improper decision to enter into the "takeover agreement" with the project owner, and to commit to a scope of work far beyond IFIC's and STEP's contractual responsibilities, all to the detriment of the Defendants. The Defendants aver that IFIC's acts in this regard breached the Indemnity Agreement, breached IFIC's duty to act in good faith and deal fairly with the Defendants, and waived any rights IFIC would have otherwise had under the Indemnity Agreement.

74. The Defendants aver that counsel for Basil Skelton, one of the Defendants, transmitted a letter dated November 4, 2011 (the "Waldrop letter"), to Frank Tanzola ("Tanzola"), Senior Vice President and Chief Legal Officer for IFIC. A copy of that letter is attached hereto as **Exhibit C**. The Defendants aver that Tanzola and IFIC failed and/or refused to respond to this letter. Defendants further aver that IFIC has failed to adequately investigate the Dalewood claims and to properly, adequately and accurately characterize the Dalewood claims as requested in the Waldrop letter. The Defendants aver that IFIC's failure and/or refusal to consider the requests made in the Waldrop letter, and IFIC's decision to subsequently enter

into the takeover agreement, over the objection of STEP and without the Indemnitors' consent, constitutes a breach of IFIC's duty to the Defendants to deal fairly and in good faith with them.

75. Any allegations of the Plaintiff's Complaint not specifically admitted above are now denied as if specifically denied.

76. Wherefore, Defendants deny all liability to the Plaintiff for any amount or relief and demand that they be dismissed from this cause with their costs, including discretionary costs.

77. Defendants further demand that a jury hear all issues of fact joined between the parties in this cause.

## COUNTERCLAIM

Comes the Defendant, Solutions to Every Problem, Inc. ("STEP"), without waiving its right to have all claims between STEP and IFIC litigated in the prior pending Georgia suit, and asserts the following contingent counterclaim against the Plaintiff and Counter-Defendant International Fidelity Insurance Company ("IFIC") in the event that IFIC'S Complaint against STEP in this cause is not dismissed and the parties are not allowed to proceed in the Georgia suit:

### GENERAL ALLEGATIONS

1. STEP is a corporation organized and existing under the laws of the State of Georgia with its principal place of business located at 12744 Kingston Pike, Suite 201, Knoxville, Tennessee 37934. STEP is in the business of constructing multi-family residential communities.

2. IFIC is a foreign for-profit corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located in Newark, New Jersey.

IFIC is licensed to transact business, and is transacting business, in both the State of Georgia and the State of Tennessee.

3. Jurisdiction and venue are proper in this Court.

4. The allegations set forth in the Defendants' Answer set forth above are incorporated herein by reference.

## CLAIMS FOR RELIEF

5. The allegations of STEP's complaint against IFIC filed in the Georgia suit and attached as **Exhibit A** to the Defendants' Answer herein are incorporated herein by reference.

6. Wherefore, premises considered, STEP demands the following relief:

   A. That IFIC be required to answer this counterclaim within the time required by the applicable rules;

   B. That STEP have judgment against IFIC for the relief requested against IFIC in its Georgia suit complaint incorporated herein by reference;

   C. That STEP have such further relief as it is entitled under the facts and law of this cause.

   D. That a jury try all issues of fact joined between the parties in this cause.

/s/ Philip E. Beck w/permission
Philip E. Beck, Esq. (Tennessee BPR #009345)
pebeck@smithcurrie.com
Smith, Currie & Hancock LLP
2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303-1227
Phone: (404) 582-8028
Fax: (404) 688-0671
Attorney for Solutions to Every Problem, Inc.

/s/ R. Loy Waldrop, Jr.
R. Loy Waldrop, Jr., Esq. (BPR #000894)
lwaldrop@lewisking.com
/s/ Jimmy D. Holbrook, Jr.
Jimmy D. Holbrook, Jr., Esq. (BPR #018038)
jholbrook@lewisking.com
LEWIS, KING, KRIEG & WALDROP, P.C.
One Centre Square, Fifth Floor
620 Market Street
Post Office Box 2425
Knoxville, TN 37901
Phone: (865) 546-4646
Fax: (865) 523-6529
Attorneys for all Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of April, 2012, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ R. Loy Waldrop, Jr.
R. Loy Waldrop, Jr. (BPR #000894

Doc. #125