## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:12-CV-37 |
| SOLUTIONS TO EVERY PROBLEM, INC., BASIL A. SKELTON, JEFFREY L. WOOD, IDA SALISA WOOD, NICKAJACK PROPERTIES, LLC, and COOL SPORTS, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### AFFIDAVIT OF PHILIP E. BECK

STATE OF GEORGIA   )
                      )
COUNTY OF FULTON  )

Philip E. Beck, having been duly sworn, does hereby depose and state as follows:

1.

I am an active member in good standing of both the State Bar of Georgia (Georgia Bar No. 046015) and the Tennessee State Bar (Tennessee BPR No. 009345). I am a practicing attorney and a partner in the law firm of Smith, Currie & Hancock LLP, with the following office address: 2700 Marquis One Tower, 245 Peachtree Center Avenue, NE, Atlanta, Georgia 30303.

2.

My firm and I represent Solutions to Every Problem, Inc. ("STEP"), a corporation incorporated in Georgia, with its principal place of business located in Knoxville, Tennessee, in connection with claims and disputes arising out of a construction project located in Albany, Georgia

and known as Dalewood Estates Senior Housing Community ("Project"). That representation includes serving as counsel of record for STEP in a lawsuit my firm filed on behalf of STEP on December 21, 2011 in Fulton County, Georgia – *Solutions to Every Problem, Inc. v. Dalewood Estates Senior Housing, Inc. and International Fidelity Insurance Company*; Superior Court of Fulton County, Georgia; Civil Action File No. 2011CV20950 ("Georgia Case") – as well as co-counsel of record for STEP in a lawsuit filed against STEP and others in federal court in Knoxville Tennessee – *International Fidelity Insurance Company v. Solutions to Every Problem, Inc., Basil A. Skelton, Jeffrey L. Wood, Ida Salisa Wood, Nickajack Properties, LLC and Cool Sports, LLC*; United States District Court, Eastern District of Tennessee at Knoxville; Civil Action File No. 3:12-CV-37 ("Tennessee Case").

3.

I am over 21 years of age and competent to provide this Affidavit. I make the statements contained in this Affidavit based on my personal knowledge, for use in the above-styled lawsuit (i.e., the Tennessee Case).

4.

A true and accurate copy of the Complaint my firm filed on behalf of STEP in the Georgia Case is attached hereto as **Exhibit A**. The Complaint named both Dalewood Estates Senior Housing, Inc., the Owner of the Project ("Dalewood"), and International Fidelity and Insurance Company, the Plaintiff in the Tennessee Case ("IFIC"), as Defendants. The Complaint sought a determination that Dalewood had breached the construction contract between Dalewood and STEP by, among other things, failing to pay STEP in full for its work on the Project and by wrongfully terminating the contract, and requested that actual damages in excess of $1,000,000 be awarded. The Complaint also sought a declaration that IFIC had no right or obligation to enter into an

2

agreement with Dalewood to take over and complete the Project since Dalewood had breached and wrongfully terminated the contract and STEP had honored its contractual obligations.

5.

Under the Georgia Rules of Civil Procedure, a Defendant is allowed 30 days from the date of service to file an Answer or other responsive pleading to a Complaint. If a Defendant fails to do so, the Defendant is automatically in default, O.C.G.A. § 9-11-12(a), but is allowed a 15-day grace period in which the Defendant can open the default, as of right, by paying court costs, with that right expiring 45 days after the date of service, O.C.G.A. § 9-11-55(a).

6.

STEP filed the Georgia Case on December 21, 2011, and the Complaint was properly served on Dalewood's Georgia registered agent on January 11, 2012.

7.

By March 5, 2012, more than 50 days had elapsed since Dalewood was served with the Complaint, and Dalewood had not filed an Answer or any responsive pleading. As such, under Georgia law, the automatic default of Dalewood had occurred and Dalewood's 15 day grace period had already expired.

8.

On or about March 28, 2012, Dalewood filed a "Motion to Set Aside Default Judgment" and supporting Memorandum of Law.

9.

Dalewood's "Motion to Set Aside Default Judgment" is still pending in the Superior Court of Fulton County, Georgia.

10.

The Superior Court of Fulton County, Georgia has placed the Georgia Case on its Default Calendar and has set the case for a hearing on May 24, 2012, demanding that Dalewood show cause as to why an entry of default should not be entered against it. A true and exact copy of the Rule Nisi notice is attached hereto as **Exhibit B**.

11.

It is my belief, under the applicable Georgia law, that Dalewood's Motion should be denied. Based on my experience, the Georgia court likely will deny Dalewood's "Motion to Set Aside Default Judgment."

_____
Philip E. Beck

Sworn to and subscribed before me
this 7th day of May, 2012.

_____
Notary Public

My commission expires: July 16, 2015

4

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| SOLUTIONS TO EVERY PROBLEM, INC., | ) ) ) | MAY − 7 2012 |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION |
| DALEWOOD ESTATES SENIOR HOUSING, INC. and INTERNATIONAL FIDELITY INSURANCE COMPANY, | ) ) ) ) ) ) | FILE NUMBER 2011CV209501  JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

**FILED IN OFFICE**
**DEC 21 2011**
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

### COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

Solutions to Every Problem, Inc. ("STEP"), the Plaintiff in the above-styled action,

brings this Complaint against Defendants Dalewood Estates Senior Housing, Inc. ("Dalewood")

and International Fidelity Insurance Company ("IFIC") showing this Court as follows.

### GENERAL ALLEGATIONS

1. STEP is a corporation organized and existing under the laws of the State of Georgia, with

   its principal place of business located at 12744 Kingston Pike, Suite 201, Knoxville,

   Tennessee 37934; STEP is in the business of constructing multi-family residential

   communities.

2. Dalewood is a corporation organized and existing under the laws of the State of Georgia,

   with its principal place of business located in Albany, Georgia. Service of process on

   Dalewood may be effected by service upon Dalewood's registered agent, Gregory

   Timothy Bailey, at 571 Culberson Street, Atlanta, Fulton County, Georgia 30310.

1

3. IFIC is a foreign corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located in Newark, New Jersey; IFIC is licensed to transact business, and is transacting business, in the State of Georgia. Service of process on IFC may be effected by service upon IFIC's registered agent in Georgia, Terry Brown, at 2175 Parklake Drive, Suite 422, Atlanta, Fulton County, Georgia 30345.

4. Jurisdiction and venue are proper in this Court.

5. In approximately January of 2004, Dalewood approached STEP about potentially building a senior citizen housing project in Albany, Georgia.

6. Dalewood hired John I. Rivers Associates Inc. as the Project Architect ("the Architect") to provide the design for the proposed project which Dalewood would then furnish to STEP.

7. At Dalewood's request, STEP began working with the Architect in an attempt to get the cost of the project to a level that HUD would agree to fund it and Dalewood could build and operate it profitably.

8. In approximately July of 2007, Dalewood and STEP entered into a written contract ("the Agreement") to construct a low-income senior citizen housing community in Albany, Georgia in the form of a project known as the Dalewood Estates Senior Housing Community ("the Project").

9. According to the terms of the Agreement, a true and correct copy of which is attached hereto as **Exhibit A**, STEP was to construct the Project in exchange for payment from Dalewood. The Project was to be funded by the United States Department of Housing

2

and Urban Development ("HUD") pursuant to an arrangement between HUD and Dalewood.[1]

10. Pursuant to the terms of the Agreement, STEP procured and furnished a payment and performance bond issued by IFIC as surety ("Bonds"); a true and correct copy of the Bonds is attached hereto as **Exhibit B**.

11. As a condition of the issuance of the Bonds, IFIC required STEP and other indemnitors to sign an Agreement of Indemnity, assuring that the indemnitors and STEP would be bound to pay IFIC for any valid and justified expenses IFIC may be required to incur as a result of the issuances of the Bonds.

12. On or around November 1, 2007, STEP began construction of the Project.

13. From the outset of the Project, STEP experienced delays and impediments due to design issues related to deficiencies in the plans furnished by Dalewood for the Project. For example, immediately upon beginning site work, STEP encountered a major underground natural gas pipeline that was not shown or taken into account on any plans furnished for the Project. The steps required to build around the pipeline caused severe delays to the Project and significant resequencing of the work.

14. STEP submitted numerous requests for change orders to increase the time allowed to complete the Project as well as for reimbursement of the additional costs incurred by STEP as a result of design changes; some of these were granted and some denied.

15. Dalewood consistently underpaid STEP on monthly progress payments throughout the course of the Project.

16. Due to numerous design errors and deficiencies, the City of Albany's inspectors required the Architect to issue new plans and designs, further delaying the Project; with the

---

[1] The Agreement consists of two portions, the HUD form agreement and the AIA A-201 General Conditions.

Architect's failure to issue the revised plans and designs in a timely manner delaying the Project even further.

17. Despite the recurring design problems and the associated delays and additional costs, STEP ultimately substantially completed the Project; STEP received an exterior Certificate of Occupancy on the Project on January 17, 2010 and an interior Certificate of Occupancy on November 13, 2010.

18. In February of 2010, a HUD inspector visited the site and issued a report, a true and correct copy of which is attached hereto as **Exhibit C**. This HUD Inspection Report stated that the Project was 88% complete as of that time and that the "Architect performance and services are poor. His not responding to contractor request and not supplying the contractor with plans and designs for changes have delayed this project."

19. Dalewood took possession of the Project on or around November 13, 2010 and a number of residents moved in.

20. STEP remained on site after Dalewood took possession of the Project site in order to finish the remaining warranty work and punch-list work which had been delayed and was continuing to be delayed by design deficiencies.

21. On January 7, 2011, Dalewood held a meeting with STEP and HUD, wherein Dalewood informed STEP it would only have 14 days to complete all punchlist work.

22. On January 26, 2011, representatives of Dalewood and local law enforcement in Albany escorted STEP employees off the Project site. The same day, Dalewood sent a letter informing STEP that Dalewood considered STEP to be in default under the Agreement and that the Agreement was being terminated for default; Dalewood copied IFIC on this letter.

4

23. At the time Dalewood terminated the Agreement, Dalewood owed STEP at least $193,000 under the terms of the Agreement. Further, STEP had performed approximately $400,000 of additional work relating to change orders required by the job, but that had not been signed by Dalewood. In order to continue the Project despite Dalewood's non-payment, STEP was forced to contribute a significant amount of its own funds into the Project.

24. On or about February 17, 2011, IFIC sent a letter to STEP stating that IFIC had received a Proof of Claim from Dalewood, and asking whether the claim was valid.

25. STEP and its attorney advised IFIC that Dalewood's claim was not valid and agreed to cooperate with IFIC to demonstate that.

26. Over the next nine months, STEP's CEO, Jeff Wood, met with representatives of IFIC on numerous occasions and provided documents and information related to the Project. STEP understood that these meetings and discussions were for purposes of providing IFIC with the information necessary to rebut Dalewood's claim.

27. In October of 2011, IFIC informed STEP that IFIC was negotiating a "takeover agreement" with Dalewood, whereby IFIC would hire another contractor to finish the Project for Dalewood's benefit. IFIC informed STEP it would look to STEP for reimbursement pursuant to the Agreement of Indemnity.

28. On two occasions in November of 2011, counsel for Basil Skelton, one of the indemnitors, sent letters to IFIC's Frank Tanzola objecting to IFIC's signing a takeover agreement with Dalewood on the Project.

5

29. On December 5, IFIC's Frank Tanzola advised counsel for Basil Skelton that he intended to go forward with the takeover agreement despite STEP's and the indemnitors' objections.

30. On December 14, 2010, counsel for STEP demanded that IFIC not enter into any takeover meeting with Dalewood and requested a meeting. To date, IFIC has not responded.

## COUNT ONE
## BREACH OF CONTRACT AGAINST DALEWOOD

31. STEP incorporates herein by this reference paragraphs 1-30 above, as if fully set forth herein.

32. Pursuant to the Agreement between STEP and Dalewood, Dalewood was to pay STEP for the construction of the Project.

33. The Project reached Substantial Completion upon receipt of the Certificate of Occupancy for the interior of the buildings on November 13, 2010, at which time Dalewood took occupancy of the Project.

34. Dalewood breached the Agreement with STEP by wrongfully terminating STEP on January 26, 2011, after substantial completion, while Dalewood was still performing warranty and punchlist work which had been delayed by design deficiencies.

35. In addition to wrongfully terminating STEP's performance of the Agreement, Dalewood has materially breached its Agreement with STEP by failing to pay STEP: (a) an undisputed contract balance of approximately $193,000; (b) for extra work performed by STEP which was the subject of change order requests totaling approximately another $400,000; and (c) for the other damages STEP has incurred as a result of Dalewood's various material breaches of the Agreement.

6

36. Dalewood materially breached the Agreement in various other respects as well, including, but not limited to: (a) failing to provide STEP accurate and complete design documents by which to construct the Project; (b) failing to obtain timely design revisions and solutions to design problems and omissions; (c) failing to provide STEP timely responses and information; (d) interfering with, impeding, and hindering STEP's performance of its work; and (e) failing to timely fulfill various other implied and express legal and contractual obligations.

37. As a direct and foreseeable result of these various material breaches of the Agreement by Dalewood, STEP has incurred actual damages in excess of $1,000,000, with STEP's damages continuing to mount.

38. All conditions precedent to the bringing of this action have been satisfied, excused, or waived.

39. STEP is legally entitled to recover damages from Dalewood, for breach of contract, in the full amount of STEP's actual damages, as proven at trial.

## COUNT TWO
## QUANTUM MERUIT AGAINST DALEWOOD

40. STEP incorporates herein by this reference Paragraphs 1-30 of this Complaint as if fully set forth herein.

41. STEP performed improvements on the Project, at Dalewood's insistence and for Dalewood's benefit, having a value of at least $600,000, for which Dalewood has not paid STEP.

42. STEP provided the labor, services, and materials necessary to perform this work with the understanding and expectation that STEP would be paid for the work by Dalewood;

7

Dalewood knew this was STEP's expectation and understanding, and received the benefit of the work.

43. Despite the foregoing, Dalewood has not paid STEP for labor, services, and materials STEP provided having a value of at least $600,000.

44. If and to the extent it is determined that this work is not covered by and compensable under the Agreement, STEP is entitled to recover the reasonable value of this work from Dalewood in *quantum meruit*.

45. All conditions precedent to the bringing of this action have been satisfied, excused, or waived.

## COUNT THREE
## DECLARATORY JUDGMENT AGAINST IFIC

46. STEP incorporates herein by this reference paragraphs 1-30 of this Complaint as if fully set forth herein.

47. Dalewood's termination of STEP was unjustified and wrongful and constituted a material breach of the Agreement.

48. From the time Dalewood wrongfully terminated STEP and asserted a claim against IFIC under the Bonds, STEP fully informed IFIC of its position and the facts upon which STEP's position was based, cooperated fully with IFIC in IFIC's investigation of Dalewood's claim, and took all steps necessary for IFIC to reject Dalewood's claim under the Bonds.

49. Over a period of several months, STEP worked closely with representatives of IFIC to prove that Dalewood's termination of STEP was wrongful and that Dalewood still owed STEP a substantial amount of money on the Project.

8

50. STEP never consented to, and in fact expressly objected to, IFIC's entering into a takeover agreement with Dalewood.

51. IFIC owes STEP a duty of good faith and fair dealing in administering the Bonds and dealing with Dalewood's claims.

52. IFIC has failed to consider STEP's objections and proof offered to rebut Dalewood's claims under the Bonds.

53. STEP is entitled to a Declaratory Judgment enjoining IFIC from entering a takeover agreement with Dalewood.

54. If and to the extent IFIC has already entered into a takeover agreement with Dalewood, STEP is entitled to a Declaratory Judgment voiding the takeover agreement and/or declaring that STEP has no obligation to indemnify IFIC under the Agreement of Indemnity or otherwise.

55. All conditions precedent to the bringing of this action have been satisfied, excused, or waived.

## COUNT FOUR
## ATTORNEY'S FEES PURSUANT TO O.C.G.A. §13-6-11
## AGAINST DALEWOOD AND IFIC

56. STEP hereby incorporates by this reference Paragraphs 1-55 of this Complaint as if fully set forth herein.

57. STEP has made demand on Dalewood for a portion of the monies Dalewood owes STEP for STEP's work on the Project.

58. Dalewood has failed and refused to pay any of the amounts due and owing to STEP.

9

59. Dalewood's refusal to pay has caused STEP unnecessary trouble and expense, and forced STEP to hire counsel to recover the amounts due and to incur attorneys' fees, court costs, and litigation expenses.

60. Dalewood's failure to pay the amounts due and owing to STEP constitutes bad faith and stubborn litigiousness on the part of Dalewood.

61. Pursuant to O.C.G.A. §13-6-11, STEP is entitled to be awarded its expenses of litigation, including reimbursement of its reasonable attorneys' fees, incurred as a result of Dalewood's bad faith and stubborn litigiousness and Dalewood's subjecting STEP to unnecessary trouble and expense.

62. STEP has demanded that IFIC refrain from entering into a takeover agreement with Dalewood and from paying any additional monies to Dalewood or for Dalewood's benefit, for the reasons noted above.

63. IFIC has failed and refused to honor STEP's demands, making this litigation against IFIC necessary.

64. IFIC's refusal to honor STEP's requests and demands has caused STEP unnecessary trouble and expense, and has forced STEP to hire counsel to bring this action and to incur attorneys' fees, court costs, and litigation expenses.

65. IFIC's failure to honor its obligations to STEP constitutes bad faith and stubborn litigiousness on IFIC's part.

66. Pursuant to O.C.G.A. §13-6-11, STEP should be awarded its expenses of litigation, including reimbursement of its reasonable attorneys' fees, incurred as a result of IFIC's bad faith and stubborn litigiousness and IFIC's subjecting STEP to unnecessary trouble and expense.

WHEREFORE, Plaintiff respectfully requests the following relief:

    a.  That STEP have judgment against Dalewood under Count I of the Complaint in the amount of its actual damages as proven at trial, plus prejudgment and post-judgment interest at the legal rate;

    b.  That STEP have judgment against Dalewood under Count II of the Complaint in an amount equal to the reasonable value of any uncompensated work performed by STEP which is not covered by and reimbursable under the Agreement, plus prejudgment and post-judgment interest at the legal rate;

    c.  That the Court enter a declaratory judgment in favor of STEP against IFIC, under Count III of the Complaint, enjoining IFIC from entering into a takeover agreement with Dalewood, and/or declaring that any takeover agreement which may have been entered into is void and that STEP has no obligation under the Agreement of Indemnity or otherwise to indemnify IFIC for any costs associated with the takeover agreement;

    d.  That STEP be awarded its reasonable attorneys' fees and expenses of litigation in an amount to be determined pursuant to O.C.G.A. §13-6-11, under Count Four of the Complaint; and

    e.  That the Court grant STEP its costs and such further relief as the Court deems just and appropriate based upon the evidence.

11

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demand a trial by jury as to all claims and issues which are so triable.

Respectfully submitted this 21st day of December, 2011.

SMITH, CURRIE & HANCOCK LLP

By: _____
Philip E. Beck
Georgia Bar No. 046015
C. Damon Gunnels
Georgia Bar No. 843266

ATTORNEYS FOR PLAINTIFF
SOLUTIONS TO EVERY PROBLEM (STEP),
INC.

2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA  30303-1227
Telephone:    (404) 582-8028
Facsimile:    (404) 688-0671

12

# Capital Advance Program
# Construction Contract
# Lump Sum

For use under Section 202 of the Housing Act of 1959
or Section 811 of the National Affordable Housing Act)

**U.S. Department of Housing
and Urban Development**
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0011
(exp. 7/31/2010)

**Public reporting burden** for this collection of information is estimated to average 16 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including This information collection suggestions for reducing this burden, to the Reports Management Officer, Paperwork Reduction Project (2502-0011), U.S. Department of Housing and Urban Development, 451 7th Street, SW, Washington, DC 20410-3600.

The Department of Housing and Urban Development (HUD) is authorized to collect this information by provisions set forth in Article 1.E of the National Housing Act (Public Law 479, 48 Stat. 1246, 12 U.S.C., 1701 et. seq.). It is provided by contractors and mortgagors to obtain approval from the FHA Commissioner's approval for any changes in the terms of the Contract Document, or order for extra work, or changes by altering or adding to the work, or which will change the design concept of the Construction Contract. This information is used by HUD to ensure that viable projects are being developed. Furnishing this information is mandatory, and failure to provide it may result in your not receiving your benefits. The information is considered non-sensitive, and no assurance of confidentiality is provided.

**Privacy Act Notice.** The United States Department of Housing and Urban Development, Federal Housing Administration, is authorized to solicit the information requested in this form by virtue of Title 12, United States Code, Section 1701 et seq., and regulations promulgated thereunder at Title 12, Code of Federal Regulations. While no assurances of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information project. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number.

This Agreement made the ~~31st 24th~~ *by H few* day of October 20 07 , between _____
*total 24th few*

Solutions ~~for Every Problem~~ (STEP), Inc. _____ (hereinafter called the "Contractor") and

Dalewood Estates Senior Housing, Inc. _____ (hereinafter called the "Owner").

Witnesseth, that the Contractor and the Owner, for the consideration hereinafter set out, agree as follows:

## Article 1 – Scope of Contract

A. The Contract between the parties is set forth in the "Contract Documents" which consists of this Agreement, the Drawings and Specifications, together with any addenda thereto, the current edition of AIA Document A201, "General Conditions of the Contract for Construction," except all paragraphs concerning arbitration, and Form HUD 2554, "Supplementary Conditions of the Contract for Construction." The provisions of this instrument and the said HUD Supplementary Conditions take precedence over all inconsistent provisions in the said AIA General Conditions. This Contract constitutes the entire agreement between the parties, and any previously existing contract concerning the work contemplated by the Contract Documents is hereby revoked.

B. The Contractor shall furnish and perform all of the materials and perform all of the work (within the property lines) shown on, and in accordance with, the Drawings and Specifications entitled

_____
Dalewood Estates -- 202 Senior Housing Community ,

HUD Project No. 061-EE125 , dated 4/30/2007 Revised 6/27/2007

C. The Drawings, which are numbered See Attachment 1 ,

and the Specifications, the pages of which are numbered See Attachment 2

and addenda numbered 1 dated 7/11/07; 2 dated 10/09/07 ,

have been prepared by John I. Rivers Assoc., Inc. , ("Design Architect").

The Architect administering the Construction Contract (hereinafter, and elsewhere in the Contract Documents, referred to as the "Architect") is John I. Rivers Assoc., Inc.
_____

D. A master set of said Drawings and Specifications, identified by the parties hereto and by the Design Architect, the Architect, and the

Contractor's Surety or Guarantor have been placed on file with the Department of Housing and Urban Development ("HUD"), and shall govern in all matters which arise with respect to such Drawings and Specifications.

E. Changes in the Drawings and Specifications or any terms of the Contract Documents, or orders for extra work, or changes by altering or adding to the work, or which will change the design concept, may be affected only with the prior written approval of HUD under such conditions as HUD may establish.

## Article 2 – Time

A. The work to be performed under this Contract shall be commenced within 10 days of this Agreement, and shall be completed by August 1 , 20 08 . The time by which the work shall be completed may be extended in accordance with the terms of the said AIA General Conditions only with the prior written approval of HUD.

B. The Contractor shall correct any defects due to faulty materials or workmanship which appear within one year from the date of final completion.

C. If the work is not brought to final completion in accordance with the Drawings and Specifications, including any authorized changes, by the date specified above, or by such date to which the contract time may be extended, the sum stated in Article 3A below shall be reduced by the actual cost of taxes and insurance, as approved by HUD, for the period from the scheduled date of completion through the date construction was actually completed, shall be determined. This cost shall be reduced by an amount equal to the project's net operating income (as determined by HUD) for the period upon which the aforementioned actual costs are based.

D. The Owner and Contractor may amend this contract prior to initial endorsement, in a form prescribed by the Commissioner, to provide for an incentive payment to the Contractor, which will result in an increase in the contract sum stated in Article 3A below, if the work is completed before the date specified in this contract. The Contractor will **not** be entitled to any incentive payment resulting

Previous editions are obsolete ____ 1 of 3 ____

form **HUD-92442-CA** (11/00)
ref. Handbooks 4571.4 & 4571.5

**EXHIBIT**
**A**
Dibbler's

from early completion if HUD determines that the Contractor's cost certification, if required by Article 7, is fraudulent or materially misrepresents the Contractor's actual cost of construction.

E. The date of final completion shall be the date the HUD representative signs the final HUD Representative's Trip Report provided that the trip report is subsequently endorsed by the Chief Architect.

## Article 3 – Contract Sum and Payments

A. The Owner shall pay the Contractor for the performance of the Contract, as hereinafter provided, the sum of $ 3,299,036.06

B. Each month after the commencement of work hereunder, the Contractor shall make a monthly request on Form HUD 92448 for payment by the Owner for work done during the preceding month. Each request for payment shall be filed at least 10 days before the date payment is desired. Subject to the approval of HUD, the Contractor shall be entitled to payment thereon in an amount equal to (1) the total value of classes of the work acceptably complete; plus (2) the value of materials and equipment not incorporated in the work, but delivered to and suitably stored at the site; plus (3) the value of components stored off-site in compliance with applicable HUD requirements less (4) 10 percent holdback and less prior payments. The "values" of (1), (2) and (3) shall be computed in accordance with the amounts assigned to classes of the work in the "Contractor's and/or Mortgager's Cost Breakdown," attached hereto as Exhibit "A". The Contractor agrees that no materials or equipment required by the Specifications will be purchased under a conditional sale contract or with the use of any security agreement or the vendor's title or lien retention instrument.

C. The balance due the Contractor hereunder shall be payable upon the expiration of 30 days after the work hereunder is fully complete, provided the following have occurred:

(1) All work hereunder requiring inspection by municipal or other governmental authorities having jurisdiction has been inspected and approved by such authorities and by the rating or inspection organization, bureau, association or office having jurisdiction;

(2) All certificates of occupancy, or other approvals, with respect to all units of the project have been issued by State or local governmental authorities having jurisdiction; and

(3) Permission(s) To Occupy (Form HUD-92485) for all units of the project have been issued by HUD.

D. With its final application for payment by the Owner, the Contractor shall disclose, on a form prescribed by HUD, all unpaid obligations contracted in connection with the work performed under this Contract. The Contractor agrees that, within 15 days following receipt of final payment, it will pay such obligations in cash and furnish satisfactory evidence of such payment to the Owner.

## Article 4 – Receipts and Releases of Liens

The Owner may require the Contractor to attach to each request for payment its acknowledgement of payment and all subcontractors' and material supplier's acknowledgements of payment for work done and materials, equipment and fixtures furnished through the date covered by the previous payment. Concurrently with the final payment, the Owner may require the Contractor to obtain similar waivers or releases from all subcontractors and material suppliers.

## Article 5 – Requirements of Contractor

A. The Contractor shall furnish, at its own expense, all building and

other permits, licenses, tools, equipment and temporary structures necessary for the construction of the project. The Contractor shall give all required notices and shall comply with all applicable codes, laws, ordinances, rules and regulations, and protective covenants, and with the current regulations of the National Board of Fire Underwriters, wherever applicable. The Contractor further shall comply with the provisions of the Occupational Safety and Health Act of 1970. The Contractor shall immediately notify HUD of the delivery of all permits, licenses, certificates of inspection, certificates of occupancy, and any other such certificates and instruments required by law, regardless of to whom issued, and shall cause them to be displayed to HUD upon request.

B. If the Contractor observes that the Drawings and Specifications are at variance with any applicable codes, laws, ordinances, rules or regulations, or protective covenants, it shall promptly notify the Architect in writing, and any necessary changes shall be made as provided in this Contract for changes in the Drawings and Specifications. If the Contractor performs any work knowing it to be contrary to such codes, laws, ordinances, rules or regulations, or protective covenants, without giving such notice to the Architect, it shall bear all cost arising therefrom.

C. Upon completion of construction, the Contractor shall furnish to the Owner a survey showing the location on the site of all improvements constructed thereon, and showing the location of all water, sewer, gas and electric lines and mains, and of all existing utility easements. Such survey shall be prepared by a licensed surveyor who shall certify that the work is installed and erected entirely upon the land covered by the mortgage and within any building restriction lines on said land, and does not overhang or otherwise encroach upon any easement or right-of-way of others. In addition, the Contractor shall furnish additional surveys when required by the Owner for any improvements, including structures and utilities, not theretofore located on a survey. The Contractor shall furnish copies of such survey required hereunder for HUD.

D. The Contractor shall assume full responsibility for the maintenance of all landscaping which may be required by the Drawings and Specifications until such time as both parties to this Contract shall receive written notice from HUD that such landscaping has been finally completed. The Owner hereby agrees to make available to the Contractor, for such purpose, without cost to the latter, such facilities as water, hose and sprinkler.

## Article 6 – Assurance of Completion

The Contractor shall furnish to the Owner assurance of completion of the work in the form of (specify) _____

    100% Performance and Payment Bond
_____
_____
_____
_____
_____
_____
_____
_____

Such assurance of completion shall run to the Owner and HUD as obligees.

form HUD-92442-CA
ref. Handbooks 4571.4

## Article 7 – Cost Certification

An identity of interest between the Owner and the Contractor is prohibited. In the event HUD determines that there is an identity of interest between the Owner and the Contractor, the Contractor shall certify on a form prescribed by HUD, its cost incurred in the performance of work under this Contract.

## Article 8 – Right of Entry and Interpretation

A. HUD, its agents or assigns, at all times during construction, has the right of entry and free access to the project and the right to inspect all work done and materials, equipment and fixtures furnished, installed or stored in and about the project. For such purpose, the Contractor shall furnish such enclosed working space as HUD may require and find acceptable as to location, size, accommodations and furnishings.

B. HUD shall also have the right to interpret the Contract Documents and to determine compliance therewith.

## Article 9 – Assignments, Subcontracts and Termination

A. This Contract shall not be assignable by either party without prior written consent of the other party and HUD, except that the Owner may assign the Contract, or any rights hereunder, to HUD.

B. The Contractor shall not subcontract all of the work to be performed hereunder without the prior written consent of the Owner and HUD.

C. Upon request by the Owner, or HUD, the Contractor shall disclose the names of all persons with whom it has contracted or will contract with respect to work to be done and materials and equipment to be furnished hereunder.

D. The Contractor understands that the work under this contract is to be financed by a capital advance to be secured by a mortgage and subject to the terms of a Capital Advance Agreement between the Owner and HUD.

The Contractor further understands that said Capital Advance Agreement provides that in the event of the failure of the Owner to perform its obligations to HUD thereunder, HUD may, as attorney-in-fact for the Owner, undertake the completion of the project in accordance with this Contract. In the event HUD elects not to undertake such completion, the Contractor's obligations under this Contract shall terminate.

**In Witness Whereof,** the parties to these presents have executed this contract in six (6) counterparts, each of which shall be deemed an original, in the year and day first above mentioned.

| (Seal) Attest: | Owner |
| --- | --- |
| | Dalewood Estates |
| Witness | By Samuel L. Hill |
| Witness | Title President |

| (Seal) | Contractor |
| --- | --- |
| | Solutions to Every Problem (STEP), Inc. |
| Witness | By Jeffrey D. Wood |
| Witness Billy Jackson | Title President |

Note: If Contractor or Owner is a corporation, Secretary should attest.

Previous editions are obsolete     Page 3 of 3     form **HUD-92442-CA** (11/00) ref. Handbooks 4571.4 & 4571.5

Case 3:12-cv-00037   Document 26   Filed 05/08/12   Page 19 of 82   PageID #: 728

Exhibit 18
HUD-92442-CA, Attachment 1

Page Numbers of Architectural Drawings
Dalewood Estates

## CIVIL DRAWINGS

C1 Location of Map
C2 Topographic Survey – Existing Condition
C3 Grading Plan
C3.1 Existing Grading and Proposed Grading Plan
C4 Location Plan
C5 Roadway Alignment
C6 Utility Location Plan
C7 Plan & Profile – Sheet 1 of 3
C8 Plan & Profile – Sheet 2 of 3
C9 Plan & Profile – Sheet 3 of 3
C10 Typical Roadway Section
C11 Erosion Control Plans
C12 Erosion Control Details
C13 Erosion Control Details
C14 Erosion Control Details
C15 Sanitary Sewer Profiles
C16 Storm Drain Profiles

## STRUCTURAL DRAWINGS

S0.0 – General Notes
STD1.1 Standard Details
STD1.2 Standard Details
STD1.3 Standard Details
STD1.4 Standard Details

S1.1 Clubhouse Foundation Plan
S1.2 Clubhouse Roof Foundation Plan
S1.3 Clubhouse Building Section
S2.1 Unit Type "A" Foundation Plan
A2.2 Unit Type "A" Roof Plan
S3.1 Unit Type "B" Foundation
S3.2 Unit Type "B" Roof Plan
S4.1 Unit Type "C" Foundation Plan
S4.2 Unit Type "C" Roof Framing Plan

## LANDSCAPE DRAWING:

L-1 Landscape Site Plan
L-2 Landscape Plan- Section 1
L-3 Landscape Plan – Section 2
L-4 Landscape Plan – Section 3
L-5 Community Bldg. Blowup
L-6 (1) Typical Bldg Landscape
(2) Entry Island Landscape
(3) Detention Pond "A" & C Landscape
L-7 Details

## ARCHITECTURAL:

A0.00 Cover Sheet

S0.2 – Footing Details

**ARCHITECURAL** *(continue)*
A0.01 General Notes and Abbrev. Sheet
A1.01 Architectural Site Plan
A1.02 Site Details
A2.01 Floor Plan –Typ. Living Unit/ Roof Plan
A2.02 Floor Plan – Typ. Nine Unit/ Roof Plan
A2.03 Floor Plan – Typ. Manager Unit/ Roof Plan
A2.04 Enlarged Floor Plans
A2.05 Handicap Unit plans and details
A3.01 Interior Elevations
A4.01 Exterior Elevations
A4.02 Exterior Elevations
A4.03 Exterior Elevations
A5.01 Building Sections
A5.02 Building Sections
A6.01 Wall Sections
A6.02 Wall Sections
A6.03 Misc. Details
A7.01 Misc. Details
A7.02 Misc. Details
A8.01 Schedules and Details
A8.01 Schedules and Details

**CLUBHOUSE**
CH-1 Deleted ( See Structural)
CH-2 Floor Plan
CH-3 Roof Plan and Wall Section
CH-4 Elevations
CH-5 Building Sections
CH-6 Interior Elevations, Schedules

**MECHANICAL DRAWINGS**
M100 HVAC Floor Plan
M200 HVAC Floor Plan
M300 HVAC Floor Plan

**PLUMBING DRAWINGS**
P100 Plumbing Floor Plan
P200 Plumbing Floor Plan Unit 9
P300 Plumbing Floor Plans @ Managers Unit
P400 Clubhouse Floor Plan Unit Part Plan
P500 Plumbing Schedule, Legend & Detail
P600 Plumbing Riser Diagrams

**ELECTRICAL DRAWINGS**
E100 Electrical Part and Floor Plans
E200 Electrical Floor Plan, Unit 9
E300 Electrical Floor Plan@ Manager's Unit
E400 Elect. Clubhouse Flr Plan, Legend &
    Schedules
E500 Riser Diagrams
E600 Electrical Site Lighting Plan

Exhibit 18
HUD-92442-CA, Attachment 2

Page Numbers of Specifications
Dalewood Estates

(attach copy of Table of Contents from Specifications)

Exhibit 18
HUD-92442-CA, Attachment 2

### Page Numbers of Specifications
### Dalewood Estates

(attach copy of Table of Contents from Specifications)

Table of Contents
_____

## Table of Contents

DIVISION 1        GENERAL REQUIREMENTS

                  Section 00400      Bid Bond Form
                  Section 00610      Performance Bond
                  Section 00620      Payment Bond
                  Section 00710      General Condition of the Contract
                  Section 00770      Wage Decision
                  Section 00800      Supplementary Conditions
                  Section 01010      Summary of Work
                  Section 01040      Coordination
                  Section 01300      Submittals
                  Section 01410      Testing Laboratory Services
                  Section 01510      Temporary Facilities
                  Section 01615      Delivery, Storage and Handling
                  Section 01700      Contract Closeout
                  Section 01705      Cleaning Up
                  Section 01741      Contractor Warranty Form
                  Section 01742      Subcontractor Warranty Form


DIVISION 2        SITEWORK

                  Section 02080      Piped Utilities – Basic Materials and Methods
                  Section 02222      Excavation
                  Section 02230      Site Clearing
                  Section 02260      Excavation Support and Protection
                  Section 02270      Slope Protection and Erosion Control
                  Section 02300      Earthwork
                  Section 02440      Site Improvements
                  Section 02510      Water Distribution
                  Section 02530      Sanitary Sewage
                  Section 02550      Drainage System
                  Section 02570      Wastewater Gravity Sewer
                  Section 02610      Exterior Water System
                  Section 02619      Pavement Markings
                  Section 02710      Asphaltic Concrete Pavement
                  Section 02764      Pavement Joint Sealants
                  Section 02831      Geotextile Fabric
                  Section 02990      Landscape Work

| DIVISION 3 | CONCRETE | |
|---|---|---|
| | Section 03301 | Cast-in-Place Concrete |
| | Section 03511 | Gypsum Concrete Floor Underlayment |
| DIVISION 4 | MASONRY | |
| | Section 04100 | Mortar |
| | Section 04150 | Masonry Accessories |
| | Section 04210 | Brick Masonry |
| DIVISION 5 | METALS | |
| | Section 05500 | Metal Fabrications |
| DIVISION 6 | WOODS AND PLASTICS | |
| | Section 06100 | Rough Carpentry |
| | Section 06190 | Wood Trusses |
| | Section 06200 | Finish Carpentry |
| | Section 06410 | Cabinet Work |
| DIVISION 7 | THERMAL AND MOISTURE PROTECTION | |
| | Section 07100 | Waterproofing |
| | Section 07190 | Vapor Barrier |
| | Section 07210 | Building Insulation |
| | Section 07310 | Shingles |
| | Section 07320 | Gutter and Downspouts |
| | Section 07460 | Fiber Cement Siding |
| | Section 07620 | Sheet Metal Flashing and Trim |
| | Section 07920 | Sealants and Caulking |
| DIVISION 8 | DOORS AND WINDOWS | |
| | Section 08215 | Pre Hung Doors |
| | Section 08517 | Hot Rolled Steel Windows |
| | Section 08520 | Single Hung Vinyl Windows |
| | Section 08700 | Builders Hardware |
| DIVISION 9 | FINISHES | |
| | Section 09260 | Gypsum Board Systems |
| | Section 09300 | Tile |
| | Section 09650 | Resilient Flooring |
| | Section 09680 | Carpet |

|              | Section 09900 | Painting |
|              | Section 09921 | Textured Ceiling Coating |
|              | Section 09963 | Elastomeric Coatings |
| DIVISION 10  | SPECIALTIES   | |
|              | Section 10990 | Miscellaneous Building Specialties |
| DIVISION 11  | EQUIPMENT     | |
|              | Section 11451 | Residential Kitchen Equipment |
| DIVISION 12  | FURNISHINGS   | |
|              | Section 12505 | Mini-Blinds |
| DIVISION 15  | MECHANICAL    | |
|              | Section 15010 | Mechanical General Requirements |
|              | Section 15060 | Piping Valves and Specialties |
|              | Section 15180 | Insulation |
|              | Section 15400 | Plumbing |
|              | Section 15650 | Heating, Ventilation, and Air Conditioning |
|              | Section 15800 | Duct Work and Air Distribution |
|              | Section 15900 | Automatic Controls |
| DIVISION 16  | ELECTRICAL    | |
|              | Section 06010 | General |
|              | Section 06100 | Basic Material & Method |
|              | Section 06400 | Electrical Service & Distribution System |
|              | Section 16450 | Grounding |
|              | Section 16500 | Lighting Fixtures |
|              | Section 16750 | Miscellaneous Systems |

END OF TABLE OF CONTENTS

# Contractor's and/or Mortgagor's

## Cost Breakdown

### Schedules of Values

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0044 (exp. 11/30/2006)

Office of Housing
Federal Housing Commissioner

Public reporting burden for this collection of information is estimated to average 4 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This information is required to obtain benefits. HUD may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB Control Number.

Section 227 of the National Housing Act (Section 128 of the Housing Act of 1954, Public Law 560, 12 U.S.C. 1715r), authorizes the collection of this information. The information is required for a general contractor when an identity of interest exists between the general contractor and the mortgagor or when the mortgagor is a nonprofit entity and a cost plus contract has been used. The information is used by HUD to facilitate the advance of mortgage proceeds and their monitoring.

**Privacy Act Notice.** The United States Department of Housing and Urban Development, Federal Housing Administration, is authorized to solicit the information requested in this form by virtue of Title 12, United States Code, Section 1701 et seq., and regulations promulgated thereunder at Title 12, Code of Federal Regulations. While no assurances of confidentiality is pledged to respondents. HUD generally discloses this data only in response to a Freedom of Information request.

| Date | Sponsor |
|---|---|
| July 25, 2007 | Trinity Community Development Corporation |

| Project No. | Building Identification |
|---|---|
| 061-EE125 | Total Project to Include All 50 Units and Clubhouse |

| Name of Project | Location |
|---|---|
| Dalewood Estates Senior Housing. | Albany, Georgia |

This form represents the Contractors and/or Mortgagors firm costs and services as a basis for disbursing dollar amounts when insured advances are requested. Detailed instructions for completing this form are included on the reverse side.

| Line | Div. | Trade Item | Cost | Trade Description |
|---|---|---|---|---|
| 1 | 3 | Concrete | $ 141,500.00 | Slab on Grade and Foundations |
| 2 | 4 | Masonry | $ 25,500.00 | Brick Work |
| 3 | 5 | Metals | $ 0 | |
| 4 | 6 | Rough Carpentry | $ 443,500.00 | Wall framing, truss, headers, screen porches |
| 5 | 6 | Finish Carpentry | $ 22,800.00 | Trim, countertops, columns |
| 6 | 7 | Waterproofing | $ 0 | |
| 7 | 7 | Insulation | $ 38,500.00 | |
| 8 | 7 | Roofing | $ 52,000.00 | Single roofing, 5/8" decking w/30# felt, skylight |
| 9 | 7 | Sheet Metal | $ 9,000.00 | Flashing, gutter, and downspout |
| 10 | 8 | Doors | $ 65,200.00 | Interior/exterior, w/hardware |
| 11 | 8 | Windows | $ 34,600.00 | Single and double |
| 12 | 8 | Glass | $ 0 | |
| 13 | 9 | Lath and Plaster | $ 0 | |
| 14 | 9 | Drywall | $ 157,500.00 | All drywall — walls and ceilings |
| 15 | 9 | Tile Work | $ 0 | |
| 16 | 9 | Acoustical | $ 0 | |
| 17 | 9 | Wood Flooring | $ 0 | |
| 18 | 9 | Resilient Flooring | $ 23,800.00 | VCT and sheet vinyl |
| 19 | 9 | Painting and Decorating | $ 76,000.00 | |
| 20 | 10 | Specialties | $ 9,800.00 | Fire extinguishers, mailboxes, toilet accessories, mirrors and shelving |
| 21 | 11 | Special Equipment | $ 0 | |
| 22 | 11 | Cabinets | $ 108,000.00 | All cabinets and countertops |
| 23 | 11 | Appliances | $ 60,800.00 | Range, refrigerator, vent hood, washer and dryers |
| 24 | 12 | Blinds and Shades, Artwork | $ 5,000.00 | Horizontal, mini blinds |
| 25 | 12 | Carpets | $ 28,000.00 | Carpets and pads |
| 26 | 13 | Special Construction | $ 0 | |
| 27 | 14 | Elevators | $ 0 | |
| 28 | 15 | Plumbing and Hot Water | $ 219,000.00 | Waste, water, plumbing fixtures and water heaters |
| 29 | 15 | Heat and Ventilation | $ 175,000.00 | Air handlers, ductwork, complete heating and air conditioning system |
| 30 | 15 | Air Conditioning | $ 0 | |
| 31 | 16 | Electrical | $ 284,000.00 | Complete electrical services for buildings |
| 32 | | **Subtotal (Structures)** | **$ 1,979,000.00** | |
| 33 | | Accessory Structures | $ 318,668.16 | Community Building, dumpster enclosure and entrance sign |
| 34 | | **Total (Lines 32 and 33)** | **$ 2,297,668.16** | |

Case 3:12-cv-00037   Document 26   Filed 05/08/12   Page 27 of 82   PageID #: 736

| Line | Div. | Trade Item | Cost | Trade Description | | | |
|---|---|---|---|---|---|---|---|
| 35 | 2 | Earth Work | $ 182,000.00 | Grading, compaction, clear/grubb, cut/fill, surveying | | | |
| 36 | 2 | Site Utilities | $ 87,600.00 | Drains, storm water, storm sewer | | | |
| 37 | 2 | Roads and Walks | $ 138,600.00 | Asphalt, base, curb, stripping, sidewalks, patio | | | |
| 38 | 2 | Site Improvements | $ 0 | | | | |
| 39 | 2 | Lawns and Planting | $ 114,500.00 | Trees, shrubs, seeding, sod and benches | | | |
| 40 | 2 | Unusual Site Condition | $ | Nonresidential and Special Exterior Land Improvement (costs included in trade item breakdown) | | Offsite Costs (costs not included in trade item breakdown) | |
| 41 | | Total Land Improvements | $ 522,700.00 | | | | |
| 42 | | Total Struct. & Land Imprvts. | $ 2,820,363.16 | Description | Est. Cost | Description | Est. Cost |
| 43 | 1 | General Requirements | $ 178,210.15 | | | | |
| 44 | | Subtotal (Lines 42 and 43) | $ 2,998,573.31 | | | | |
| 45 | | Builder's Overhead @ 2% | $ 59,971.47 | | | | |
| 46 | | Builder's Profit @ 6% | $ 179,914.40 | Total $ | | | |
| 47 | | Subtotal (Lines 44 thru 46) | $ 3,238,459.17 | Other Fees | | Total $ | |
| 48 | | | | | | | |
| 49 | | Other Fees – PERMITS | $ 12,000.00 | BUILDING PERMITS | $12,000.00 | Demolition (costs not included in trade item breakdown) | |
| 50 | | Bond Premium – 2% | $ 48,576.89 | | | Description | Est. Cost |
| 51 | | Total for All Improvements | $ 3,299,036.06 | | | | |
| 52 | | Builder's Profit Paid by Means Other Than Cash | $ | | | | |
| 53 | | Total for All Improvements Less Line 52 | $ 3,299,036.06 | Total | $12,000.00 | Total $ | |

I hereby certify that all the information stated herein, as well as any information provided in the accompaniment herewith, is true and accurate.

**Warning**—HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Mortgagor | By | Date |
|---|---|---|
| Dalewood Estates Senior Housing, Inc. | *Samuel S. Mel* | 07/26/07 |
| Contractor | By | Date |
| Solutions To Every Problem, Incorporated | *Jeffrey C. Wood* Vice President | July 25, 2007 |
| FHA (Processing Analyst) | Date | FHA (Chief, Cost Branch or Cost Analyst) | Date |
| *Linda P___* | 8/20/07 | | |
| FHA (Chief Underwriter) | | *Paul Deignan* | Date 8/22/200_ |

## Instructions for Completing Form HUD-2328

This form is prepared by the contractor and/or mortgagor as a requirement for the issuance of a firm commitment. The firm replacement cost of the project also serves as a basis for the disbursement of dollar amounts when insured advances are requested. A detailed breakdown of trade items is provided along with spaces to enter dollar amounts and trade descriptions.

A separate form is prepared through line 32 for each structure type. A summation of these structure costs are entered on line 32 of a master form. Land improvements, General Requirements and Fees are completed through line 53 on the master 2328 only.

**Date**—Date form was prepared.

**Sponsor**—Name of sponsor or sponsoring organization.

**Project No.**—Eight-digit assigned project number.

**Building Identification**—Number(s) or Letter(s) of each building as designated on plans.

**Name of Project**—Sponsors designated name of project.

**Location**—Street address, city and state.

**Division**—Division numbers and trade items have been developed from the cost accounting section of the uniform system.

**Accessory Structures**—This item reflects structures, such as: community, storage, maintenance, mechanical, laundry and project office buildings. Also included are garages and carports or other buildings.

When the amount shown on line 33 is $20,000.00 or 2% of line 32 whichever is the lesser, a separate form HUD-2328 will be prepared through line 32 for Accessory Structures.

**Unusual Site Conditions**—This trade item reflects rock excavation, high water table, excessive cut and fill, retaining walls, erosion, poor drainage and other on-site conditions considered unusual.

**Cost**—Enter the cost being submitted by the Contractor or bid submitted by a qualified subcontractor for each trade item. These costs will include, as a minimum, prevailing wage rates as determined by the Secretary of Labor.

**Trade Description**—Enter a brief description of the work included in each trade item.

**Other Fees**—Includable are fees to be paid by the Contractor, such as sewer tap fees not included in the plumbing contract. Fees paid or to be paid by the Mortgagor are not to be included on this form.

**Total For All Improvements**—This is the sum of lines 1 through 50 and is to include the total builder's profit (line 46).

Case 3:12-cv-00037 Document 26 Filed 05/08/12 Page 28 of 82 PageID #: 737

# AIA DOCUMENT | A201-1997

## General Conditions of the Contract for Construction

### GENERAL INFORMATION

**PURPOSE.** AIA Document A201-1997, a general conditions form, is intended to be one of the contract documents forming the construction contract. In addition, it is frequently adopted by reference into a variety of other agreements, including the Owner-Architect agreements and the Contractor-Subcontractor agreements, to establish a common basis for the primary and secondary relationships on the typical construction project.

**RELATED DOCUMENTS.** A201-1997 is incorporated by reference into two AIA Owner-Contractor agreements (A101-1997 and A111-1997), the A401-1997 Contractor-Subcontractor agreement and several AIA Owner-Architect agreements (for example, B141-1997 and B151-1997). It is also incorporated by reference into two design-build agreements (A191-Part 2 and B901-Part 2), two Owner-Construction-Manager/contractor agreements (A121/CMc-Part 2 and A131/CMc-Part 2). A201-1997 may be adopted by indirect reference when the parties to a contract between the Owner and Architect adopt A201-1997 and in turn adopted into Architect-Consultant agreements such as AIA Documents C141-1997 and C142-1997. Such incorporation by reference into individual drafting methods and documents so incorporated are generally interpreted as part of these individual documents.

The Contract Documents, including A201-1997, record the Contractor Construction between the Owner and the Contractor. The other Contract Documents are the:
 Owner-Contractor Agreement (for example, A101-1997 or A111-1997)
 Supplementary Conditions
 Drawings
 Specification
 Modifications

Although the AIA does not produce a standard contract for Supplementary Conditions, Drawings or Specifications, a variety of model and guide documents are available, including AIA's MASTERSPEC and AIA Document A511, Guide for Supplementary Conditions.

The A201-1997 document is considered the keystone document, coordinating the many parties involved in the construction process. As mentioned above, and as referred below, it is a vital document used to allocate the proper legal responsibilities of the parties.

```
                    ┌──────────────────────┐
                    │  General Conditions  │
                    └──────────────────────┘
            ↓                                      ↓
┌──────────────────────────┐        ┌──────────────────────────┐
│ Owner-Contractor Contract│        │ Owner-Architect Contract for│
│     for Construction     │        │  Design and Administration │
└──────────────────────────┘        └──────────────────────────┘
            ↓                                      ↓
┌──────────────────────────────┐    ┌──────────────────────────────┐
│Contractor-Subcontractor Contract│  │ Architect-Consultant Contract for│
│    for a Portion of the Work    │  │   a Portion of the Services    │
└──────────────────────────────┘    └──────────────────────────────┘
```

© 1997  A I A ®
**AIA DOCUMENT A201-1997**
INSTRUCTIONS

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

Copyright © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.
WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

1

On construction projects, hundreds of contractual relationships are created between owners, architects, architects' consultants, contractors, subcontractors, sub-subcontractors, and others down through the multiple tiers of participants. If custom-crafted agreements were written in isolation for each of those contractual relationships, the problems of overlaps and gaps in the numerous participants' responsibilities could lead to mass confusion and chaos. To prevent and solve this problem, the construction industry commonly uses standardized general conditions, such as AIA Document A201-1997, for coordinating those many relationships on the project by its adoption into each contract. AIA expends a great deal of time and resources in the development of A201 and its other documents to provide four types of linkages in the tiers of legal relationships. In addition to adoption of A201 into each agreement, related AIA documents are crafted with common phrasing, uniform definitions and a consistent, logical allocation of responsibilities down through the tiers of relationships. Together, these documents are known as the A201 Family of Documents, and are listed below:

    A101-1997, Standard Form of Agreement Between Owner and Contractor (Stipulated Sum)
    A111-1997, Standard Form of Agreement Between Owner and Contractor (Cost Plus Fee with GMP)
    A401-1997, Standard Form of Agreement Between Contractor and Subcontractor
    A511, Guide for Supplementary Conditions
    A701-1997, Instructions to Bidders
    B141-1997, Standard Form of Agreement Between Owner and Architect
    B151-1997, Abbreviated Standard Form of Agreement Between Owner and Architect
    B511, Guide for Amendments to AIA Owner-Architect Agreements
    C141-1997, Standard Form of Agreement Between Architect and Consultant
    C142-1997, Abbreviated Standard Form of Agreement Between Architect and Consultant

The AIA publishes other General Conditions that conflict A201-1997 for the construction management-adviser family of documents (AIA Document A201/CMa) and the design-build family of documents (AIA Document A271).

**DISPUTE RESOLUTION—MEDIATION AND ARBITRATION.** This document contains provisions for mediation and arbitration of claims and disputes. Mediation is a non-binding process, but is mandatory under the terms of this document. Arbitration is mandatory under the terms of this document and binding in most states and under the Federal Arbitration Act. In a minority of states, arbitration provisions relating to future disputes are not enforceable but the parties may agree to arbitrate after the dispute arises. Even in those states, under certain circumstances (for example, in a transaction involving interstate commerce), arbitration provisions may be enforceable under the Federal Arbitration Act.

The AIA does not administer dispute resolution processes. To submit disputes to mediation or arbitration or to obtain copies of the applicable mediation or arbitration rules, write to the American Arbitration Association or call (800) 778-7879. The American Arbitration Association also may be contacted at *http://www.adr.org*.

**WHY USE AIA CONTRACT DOCUMENTS?** AIA contract documents are the product of a consensus-building process that balances the interests of all parties on the construction project. The documents reflect actual industry practices, not theory. They are state-of-the-art legal documents, regularly revised to keep up with changes in law and the industry. They are written, as far as possible, in everyday language. Finally, AIA contract documents are flexible; they are intended to be modified to fit individual projects, but in such a way that modifications are easily distinguished from the original, printed language.

For further information on AIA's approach to drafting contract documents, see AIA Document M120, Document Drafting Principles.

**USE OF NON-AIA FORMS.** If a combination of AIA documents and non-AIA documents is to be used, particular care must be taken to achieve consistency of language and intent among documents.

**STANDARD FORMS.** Most AIA documents published since 1906 have contained in their titles the words "Standard Form." The term "standard" is not meant to imply that a uniform set of contractual requirements is mandatory for AIA members or others in the construction industry. Rather, the AIA standard documents are intended to be used as fair and balanced baselines from which the parties can negotiate their bargains. As such, the documents have won general acceptance within the construction industry and have been uniformly interpreted by the courts. Within an industry spanning 50 states—each free to adopt different, and perhaps contradictory, laws affecting that industry— AIA documents form the basis for a generally consistent body of construction law.

**USE OF CURRENT DOCUMENTS.** Prior to using any AIA document, the user should consult an AIA component chapter or a current AIA Documents Price List to determine the current edition of each document.

© 1997 AIA®
**AIA DOCUMENT A201-1997**
INSTRUCTIONS

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Case 3:12-cv-00037   Document 26   Filed 05/08/12   Page 30 of 82   PageID #: 739

**REPRODUCTIONS.** A201-1997 is a copyrighted work and may not be reproduced or excerpted from in substantial part without the express written permission of the AIA. This document is intended to be used as a consumable—that is, the original document purchased by the user is intended to be consumed in the course of being used. There is no implied permission to reproduce this document, nor does membership in The American Institute of Architects confer any further rights to reproduce A201-1997 in whole or in part.

This document may not be reproduced for Project Manuals. Rather, if a user wishes to include it as an example in a Project Manual, the normal practice is to purchase a quantity of the original forms and bind one in the Project Manual. Modifications may be accomplished through the use of separate Supplementary Conditions, such as those derived from AIA Document A511.

Unlike many other AIA documents, A201-1997 does not carry with it a limited license to reproduce. The AIA is not permit the reproduction of this document or the use of substantial portions of language from it, except upon written application by a specific user and after receipt of written permission from the AIA.

The AIA logo is printed in red on the original version of this document. This logo distinguishes an original AIA document from copies and counterfeits. To ensure accuracy and uniformity of language, purchasers should use only an original AIA document or one that has been reproduced from an original under special limited license from the AIA. Documents generated by the software AIA Contract Documents: Electronic Format for Windows™ do not contain a red logo. Documents reproduced in this program may be accompanied by AIA Document D401, Certification of Document's Authenticity. In addition, all documents in the program contain the version number under which the document was reproduced and the date of expiration of the license.

## CHANGES FROM THE PREVIOUS EDITION

AIA Document A201-1997 revises the 1987 edition of A201 to reflect changes in construction industry practices and the law. Comments and assistance in this revision were received from numerous individuals and organizations, including those representing owners, architects, engineers, specifiers, general contractors, subcontractors, independent insurance agents, sureties, attorneys and arbitrators.

A number of substantial changes have been made to the A201-1997 document. The principal changes are described below.

ARTICLE 1: Protection of rights in Drawings, Specifications and other documents is specifically extended to those of the Architect's consultants, and includes a copyright waiver form.

ARTICLE 2: The Owner is required to designate a representative empowered to act for the Owner on the Project. The Contractor is entitled to rely on the accuracy and completeness of information furnished by the Owner.

ARTICLE 3: Procedures are given for Contractor requests for clarification and/or review of instructions in the Contract Documents regarding construction means and methods. The rights and responsibilities of the parties with respect to incidental design by the Contractor are set out in detail.

ARTICLE 4: Mediation is included as a precursor to arbitration. The Owner and Contractor waive consequential damages (i.e., indirect damages) arising out of the Contract.

ARTICLE 7: Amounts not in dispute under a Construction Change Directive must be included in Applications for Payment. Interim determination of disputed amounts under a Change Directive will be made by the Architect.

ARTICLE 9: In the case of partial occupancy and partial final payment of the contract sum, payments received by the Contractor for the Work of subcontractors are held by the Contractor for the subcontractors. Release of retainage on completed Work is required at substantial completion.

ARTICLE 10: Hazardous materials provision has been expanded to cover materials other than asbestos and PCB, and indemnification of the Contractor under these provisions has been extended to cover remediation costs.

ARTICLE 11: Project Management Protective Liability Insurance, covering risks of the Owner, Contractor and Architect, is now an option in the Conditions of the Contract.

ARTICLE 12: Concerning the correction period, if the Owner discovers Work that is not in accordance with the Contract Documents, the Owner notice to the Contractor. Failure to do so results in a waiver of the Owner's rights under the correction of Work provisions.

ARTICLE 13: The Owner is permitted to assign the Contract to the lender without consent of the Contractor.

ARTICLE 14: The Owner is permitted to terminate the Contract for convenience, with appropriate payment to the Contractor.

## USING THE A201-1997 FORM

**MODIFICATIONS.** Users are encouraged to consult an attorney before completing an AIA document. Particularly with respect to contractor's licensing laws, duties imposed by building codes, interest charges, arbitration and indemnification, this document may require modification with the assistance of legal counsel to fully comply with state or local laws regulating these matters.

Generally, necessary modifications to the General Conditions may be accomplished by Supplementary Conditions included in the Project Manual and referenced in the Owner-Contractor Agreement. See AIA Document A511, Guide for Supplementary Conditions, for model provisions and suggested format for the Supplementary Conditions.



© 1997 AIA®
**AIA DOCUMENT A201-1997**
INSTRUCTIONS

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**3**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Because A201-1997 is designed for general usage, it does not provide all the information and legal requirements needed for a specific Project and location. Necessary additional requirements must be provided in the other Contract Documents, such as the Supplementary Conditions. Consult AIA Document A521, Uniform Location of Subject Matter, to determine the proper location for such additional stipulations.

It is definitely not recommended practice to retype the standard document. Besides being a violation of copyright, retyping can introduce typographical errors and cloud the legal interpretation given to a standard clause when blended with modifications, thereby eliminating one of the principal advantages of standard form documents. By merely reviewing the modifications to be made to a standard form document, parties familiar with that document can quickly understand the essence of the proposed relationship. Commercial exchanges are greatly simplified and expedited, good-faith dealing is encouraged, and otherwise latent issues are exposed for scrutiny. In this way, contracting parties can more confidently and fairly measure their risks.

© 1997  A I A ®
**AIA DOCUMENT A201-1997**
INSTRUCTIONS

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

4

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**1997 EDITION**

# AIA DOCUMENT | A201-1997

## *General Conditions of the Contract for Construction*

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document has been approved and endorsed by The Associated General Contractors of America.

### TABLE OF ARTICLES

1.  GENERAL PROVISIONS

2.  OWNER

3.  CONTRACTOR

4.  ADMINISTRATION OF THE CONTRACT

5.  SUBCONTRACTORS

6.  CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7.  CHANGES IN THE WORK

8.  TIME

9.  PAYMENTS AND COMPLETION

10. PROTECTION OF PERSONS AND PROPERTY

11. INSURANCE AND BONDS

12. UNCOVERING AND CORRECTION OF WORK

13. MISCELLANEOUS PROVISIONS

14. TERMINATION OR SUSPENSION OF THE CONTRACT



©1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

*CAUTION: You should use an original AIA document with the AIA logo printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.*

Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, ©1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**1**

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.



## INDEX

Acceptance of Nonconforming Work
9.6.6, 9.9.3, **12.3**

Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3

Access to Work
**3.16**, 6.2.1, 12.1

Accident Prevention
4.2.3, 10

Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 4.3.8, 4.4.1, 8.3.1, 9.5.1, 10.2.5, 13.4.2, 13.7, 14.1

Addenda
1.1.1, 3.11

Additional Costs, Claims for
4.3.4, 4.3.5, 4.3.6, 6.1.1, 10.3

Additional Inspections and Testing
9.8.3, 12.2.1, 13.5

Additional Time, Claims for
4.3.4, 4.3.7, 8.3.2

**ADMINISTRATION OF THE CONTRACT**
3.1.3, 4, 9.4, 9.5

Advertisement or Invitation to Bid
1.1.1

Aesthetic Effect
4.2.13, 4.5.1

Allowances
**3.8**

All-risk Insurance
11.4.1.1

Applications for Payment
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5, 9.10, 11.1.3, 14.2.4, 14.4.3

Approvals
2.4, 3.1.3, 3.5, 3.10.2, 3.12, 4.2.7, 9.3.2, 13.4.2, 13.5

Arbitration
4.3.3, 4.4, 4.5.1, 4.6, 8.3.1, 9.7.1, 11.4.9, 11.4.10

Architect
**4.1**

Architect, Definition of
4.1.1

Architect, Extent of Authority
2.4, 3.12.7, 4.2, 4.3.6, 4.4, 5.2, 6.3, 7.1.2, 7.3.6, 7.4, 9.2, 9.3.1, 9.4, 9.5, 9.8.3, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4

Architect, Limitations of Authority and Responsibility
2.1.1, 3.3.3, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 4.4, 5.2.1, 7.4, 9.4.2, 9.6.4, 9.6.6

Architect's Additional Services and Expenses
2.4, 11.4.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4

Architect's Administration of the Contract
3.1.3, **4.2**, 4.3.4, 4.4, 9.4, 9.5

Architect's Approvals
2.4, 3.1.3, 3.5.1, 3.10.2, 4.2.7

Architect's Authority to Reject Work
3.5.1, 4.2.6, 12.1.2, 12.2.1

Architect's Copyright
1.6

Architect's Decisions
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5, 4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4

Architect's Inspections
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5

Architect's Instructions
3.2.3, 3.3.1, 4.2.6, 4.2.7, 4.2.8, 7.4.1, 12.1, 13.5.2

Architect's Interpretations
4.2.11, 4.2.12, 4.3.6

Architect's Project Representative
4.2.10

Architect's Relationship with Contractor
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1, 3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 11.4.7, 12, 13.4.2, 13.5

Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.4.7

Architect's Representations
9.4.2, 9.5.1, 9.10.1

Architect's Site Visits
4.2.2, 4.2.5, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5

Asbestos
10.3.1

Attorneys' Fees
3.18.1, 9.10.2, 10.3.3

Award of Separate Contracts
6.1.1, 6.1.2

Award of Subcontracts and Other Contracts for Portions of the Work
**5.2**

Basic Definitions
**1.1**

Bidding Requirements
1.1.1, 1.1.7, 5.2.1, 11.5.1

Boiler and Machinery Insurance
11.4.2

Bonds, Lien
9.10.2

Bonds, Performance, and Payment
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5

Building Permit
3.7.1

Capitalization
**1.3**

Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5

Certificates for Payment
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4

© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

Certificates of Inspection, Testing or Approval
13.5.4

Certificates of Insurance
9.10.2, 11.1.3

Change Orders
1.1.1, 2.4.1, 3.4.2, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 4.3.4,
4.3.9, 5.2.3, 7.1, 7.2, 7.3, 8.3.1, 9.3.1.1, 9.10.3, 11.4.1.2,
11.4.4, 11.4.9, 12.1.2

Change Orders, Definition of
7.2.1

CHANGES IN THE WORK
3.11, 4.2.8, 7, 8.3.1, 9.3.1.1, 11.4.9

Claim, Definition of
4.3.1

Claims and Disputes
3.2.3, 4.3, 4.4, 4.5, 4.6, 6.1.1, 6.3, 7.3.8, 9.3.3, 9.10.4,
10.3.3

Claims and Timely Assertion of Claims
4.6.5

Claims for Additional Cost
3.2.3, 4.3.4, 4.3.5, 4.3.6, 6.1.1, 7.3.8, 10.3.2

Claims for Additional Time
3.2.3, 4.3.4, 4.3.7, 6.1.1, 8.3.2, 10.3.2

Claims for Concealed or Unknown Conditions
4.3.4

Claims for Damages
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.3.5, 11.4.7, 11.1.2.3, 14.2.4

Claims Subject to Arbitration
4.4.1, 4.5.1, 4.6.1

Cleaning Up
3.15, 6.3

Commencement of Statutory Limitation Period
13.7

Commencement of the Work, Conditions Relating to
2.2.1, 3.2.1, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3,
6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.4.1, 11.4.6, 11.5.1

Commencement of the Work, Definition of
8.1.2

Communications Facilitating Contract Administration
3.9.1, 4.2.4

Completion, Conditions Relating to
1.6.1, 3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8,
9.9.1, 9.10, 12.2, 13.7, 14.1.2

COMPLETION, PAYMENTS AND
9

Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
9.10.4.2, 12.2, 13.7

Compliance with Laws
1.6.1, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6.4,
4.6.6, 9.6.4, 10.2.2, 11.1, 11.3, 13.1, 13.5.1, 13.5.2, 13.6,
14.1.1, 14.2.1.3

Concealed or Unknown Conditions
4.3.4, 8.3.1, 10.3

Conditions of the Contract
1.1.1, 1.1.7, 6.1.1, 6.1.4

Consent, Written
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2

CONSTRUCTION BY OWNER OR BY SEPARATE
CONTRACTORS
1.1.4, 6

Construction Change Directive, Definition of
7.3.1

Construction Change Directives
1.1.1, 3.12.8, 4.2.8, 4.3.9, 7.1, 7.3, 9.3.1.1

Construction Schedules, Contractor's
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3

Contingent Assignment of Subcontracts
5.4, 14.2.2.2

Continuing Contract Performance
4.3.3

Contract, Definition of
1.1.2

CONTRACT, TERMINATION OR SUSPENSION OF THE
5.4.1.1, 11.4.9, 14

Contract Administration
3.1.3, 4, 9.4, 9.5

Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 9.2, 11.1.3, 11.4.6, 11.5.1

Contract Documents, The
1.1, 1.2

Contract Documents, Copies Furnished
and Use of
1.6, 2.2.5, 5.3

Contract Documents, Definition of
1.1.1

Contract Sum
3.8, 4.3.4, 4.3.5, 4.4.5, 5.2.3, 7.2, 7.3, 7.4, 9.1, 9.4.2,
9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.4.1, 14.2.4, 14.3.2

Contract Sum, Definition of
9.1

Contract Time
3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1.3, 7.3, 7.4, 8.1.1, 8.2,
8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2

Contract Time, Definition of
8.1.1

CONTRACTOR
3

Contractor, Definition of
3.1, 6.1.2

Contractor's Construction Schedules
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3

Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.4.7, 14.1, 14.2.1.1

Contractor's Liability Insurance
11.1

© 1997  A I A ®
AIA DOCUMENT A201-1997
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

3

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

Contractor's Relationship with Separate
Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.4.7, 12.1.2, 12.2.4

Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.4.1.2, 11.4.7, 11.4.8

Contractor's Relationship with the Architect
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1,
3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 4.3.4,
4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, .5, 9.7,
9.8, 9.9, 10.2.6, 10.3, 11.3, 11.4.7, 12, 13.4.2, 13.5

Contractor's Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2

Contractor's Responsibility for Those Performing
the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1

Contractor's Review of Contract Documents
1.5.2, 3.2, 3.7.3

Contractor's Right to Stop the Work
9.7

Contractor's Right to Terminate the Contract
4.3.10, 14.1

Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 9.2, 9.3, 9.7.3.6, 9.8.2,
9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.5.2

Contractor's Superintendent
3.9, 10.2.6

Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
7.1.3, 7.3.4, 7.3.6, 8.2, 10, 12, 14

Contractual Liability Insurance
11.1.1.8, 11.2, 11.3

Coordination and Correlation
1.2, 1.5.2, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1

Copies Furnished of Drawings and Specifications
1.6, 2.2.5, 3.11

Copyright
1.6, 1.6.1

Correction of Work
2.3, 2.4, 3.7.4, 4.2.1, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2,
12.2, 13.7.1.3

Correlation and Intent of the Contract Documents
1.2

Cost, Definition of
7.3.6

Costs
2.4, 3.2.3, 3.7.4, 3.8.2, 3.15.2, 4.3, 5.4.2, 6.1.1, 6.2.3,
6.3, 7.3.3.3, 7.3.7, 7.3.8, 9.10.2, 10.3.2, 10.5, 11.3,
11.4, 12.1, 12.2.1, 12.2.4, 13.5, 14

Cutting and Patching
6.2.5, 3.14

Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 9.2.1.5, 10.2.1.2, 10.2.5, 10.6, 11.1, 11.4,
12.2.4

Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.6, 11.4, 12.2.4

Damages, Claims for
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4

Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2

Date of Commencement of the Work, Definition of
8.1.2

Date of Substantial Completion, Definition of
8.1.3

Day, Definition of
8.1.4

Decisions of the Architect
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.4, 4.4.1, 4.4.5,
4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1,
9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4

Decisions to Withhold Certification
9.4.1, 9.5, 9.7, 14.1.1.3

Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2,
9.9.3, 9.10.4, 12.2.1, 13.7.1.3

Defective Work, Definition of
3.5.1

Definitions
1.1, 2.1.1, 3.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 4.3.1,
5.1, 6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1

Delays and Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1, 7.4.1,
7.5.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2

Disputes
4.1.4, 4.3, 4.4, 4.5, 4.6, 6.3, 7.3.8

Documents and Samples at the Site
3.11

Drawings, Definition of
1.1.5

Drawings and Specifications, Use and Ownership of
1.1.1, 1.3, 2.2.5, 3.11, 5.3

Effective Date of Insurance
8.2.2, 11.1.2

Emergencies
4.3.5, 10.6, 14.1.1.2

Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.4.7, 14.1, 14.2.1.1

Equipment, Labor, Materials and
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.2

Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3, 3.4.1, 3.5, 3.7.1,
3.10, 3.12, 3.14, 4.2.2, 4.2.3, 4.3.4, 4.3.8, 6.2.1, 7.1.3, 7.3.4,
8.2, 9.5, 9.9.1, 10.2, 10.3, 14.2, 14.3.1, 14.3

Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3, 7.4.1,
9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2

Failure of Payment
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**4**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

Faulty Work
    (See Defective or Nonconforming Work)
Final Completion and Final Payment
    4.2.1, 4.2.9, 4.3.2, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.4.1,
    11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Financial Arrangements, Owner's
    2.2.1, 13.2.2, 14.1.1.5
Fire and Extended Coverage Insurance
    11.4
GENERAL PROVISIONS
    1
Governing Law
    13.1
Guarantees (See Warranty)
Hazardous Materials
    10.2.4, 10.3, 10.5
Identification of Contract Documents
    1.5.1
Identification of Subcontractors and Suppliers
    5.2.1
Indemnification
    3.17, 3.18, 9.10.2, 10.3.3, 10.5, 11.4.1.2, 11.4.7
Information and Services Required of the Owner
    2.1.2, 2.2.1-2.2.3, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3,
    6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3,
    11.2, 11.4, 13.5.1, 13.5.2, 13.5.2, 14.1.1.4, 14.1.4
Injury or Damage to Person or Property
    4.3.8, 10.2, 10.6
Inspections
    3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2,
    9.8.2, 9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
    1.1.1
Instructions to the Contractor
    3.2.3, 3.3.1, 3.8.1, 4.2.8, 5.2.1, 7, 12, 8.2.2, 13.5.2
Insurance
    3.18.1, 6.1.1, 7.3.6, 8.2.1, 9.3.2, 9.8.4,
    9.9.1, 9.10.2, 11
Insurance, Boiler and Machinery
    11.4.2
Insurance, Contractor's Liability
    11.1
Insurance, Effective Date of
    8.2.2, 11.1.2
Insurance, Loss of Use
    11.4.3
Insurance, Owner's Liability
    11.2
Insurance, Project Management Protective Liability
    11.3
Insurance, Property
    10.2.5, 11.4
Insurance, Stored Materials
    9.3.2, 11.4.1.4
INSURANCE AND BONDS
    11

Insurance Companies, Consent to Partial Occupancy
    9.9.1, 11.4.1.5
Insurance Companies, Settlement with
    11.4.10
Intent of the Contract Documents
    1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
Interest
    13.6
Interpretation
    1.2.3, **1.4**, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4
Interpretations, Written
    4.2.11, 4.2.12, 4.3.6
Joinder and Consolidation of Claims Required
    4.6.4
Judgment on Final Award
    4.6.6
Labor and Materials, Equipment
    1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3,
    4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
    9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Labor Disputes
    8.3.1
Laws and Regulations
    1.6, 3.6, 3.7, 3.13, 4.1.1, 4.4.8, 4.6,
    9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2,
    13.6
Liens
    2.1.2, 4.4.8, 8.2.2, 9.3.3, 9.10
Limitation on Consolidation or Joinder
    4.6.4
Limitations, Statutes of
    4.6.3, 12.2.6, 13.7
Limitations of Liability
    2.3, 3.2.1, 3.5.1, 3.7.3, 3.12.8, 3.12.10, 3.17, 3.18, 4.2.6,
    4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 9.10.4, 10.3.3,
    10.2.5, 11.2, 11.2.1, 11.4.7, 12.2.5, 13.4.2
Limitations of Time
    2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
    4.2.7, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4,
    8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9,
    9.10, 11.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14
Loss of Use Insurance
    11.4.3
Material Suppliers
    1.6, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
Materials, Hazardous
    10.2.4, 10.3, 10.5
Materials, Labor, Equipment and
    1.1.3, 1.1.6, 1.6.1, 3.4, 3.5.1, 3.8.2, 3.8.2.3, 3.12, 3.13,
    3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
    9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
    3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
    4.4.8

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

5

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

Mediation
4.4.1, 4.4.5, 4.4.6, 4.4.8, **4.5**, 4.6.1, 4.6.2, 8.3.1, 10.5

Minor Changes in the Work
1.1.1, 3.12.8, 4.2.8, 4.3.6, 7.1, **7.4**

**MISCELLANEOUS PROVISIONS**
**13**

Modifications, Definition of
1.1.1

Modifications to the Contract
1.1.1, 1.1.2, 3.7.3, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7, 10.3.2, 11.4.1

Mutual Responsibility
**6.2**

Nonconforming Work, Acceptance of
9.6.6, 9.9.3, **12.3**

Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.8.2, 9.9.3, 10.2.5, 12.2.1, 13.7.1.3

Notice
2.2.1, 2.3, 2.4, 3.2.3, 3.3.1, 3.7.2, 3.7.4, 3.9, 4.3, 4.4.8, 4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 11.1.3, 11.4.6, 12.2.2, 12.2.4, 13.3, 13.5.1, 13.5.2, 14, 14.1

Notice, Written
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4, **13.3**, 14

Notice of Testing and Inspections
13.5.1, 13.5.2

Notice to Proceed
8.2.2

Notices, Permits, Fees and
2.2.2, **3.7**, 3.13, 7.3.6.4, 10.2.2

Observations, Contractor's
1.5.2, 3.2, 3.7.3, 4.3.4

Occupancy
2.2.2, 9.6.6, 9.8, 11.4.1.5

Orders, Written
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2, 14.3.1

**OWNER**
**2**

Owner, Definition of
2.1

Owner, Information and Services Required of the
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4

Owner's Authority
1.5, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.1.3, 4.2.4, 4.2.9, 4.3.6, 4.4.7, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.1, 11.4.3, 11.4.10, 12.2.2, 12.3.1, 13.2.2, 14.3, 14.4

Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.5

Owner's Liability Insurance
**11.2**

Owner's Loss of Use Insurance
11.4.3

Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2

Owner's Right to Carry Out the Work
**2.4**, 12.2.4, 14.2.2.2

Owner's Right to Clean Up
**6.3**

Owner's Right to Perform Construction and to Award Separate Contracts
**6.1**

Owner's Right to Stop the Work
**2.3**

Owner's Right to Suspend the Work
**14.3**

Owner's Right to Terminate the Contract
**14.2**

Ownership and Use of Drawings, Specifications and Other Instruments of Service
1.1.1, **1.6**, 2.2.5, 3.2.1, 3.11.1, 3.17, 4.2.12, 5.3

Partial Occupancy or Use
9.6.6, **9.9**, 11.4.1.5

Patching, Cutting and
**3.14**, 6.2.5

Patents
**3.17**

Payment, Applications for
4.2.5, 7.3.8, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5, 9.10.1, 9.10.3, 9.10.5, 11.1.3, 14.2.4, 14.4.3

Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4

Payment, Failure of
4.3.6, 9.5.1.3, **9.7**, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6

Payment, Final
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3

Payment Bond, Performance Bond and
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, **11.5**

Payments, Progress
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3

**PAYMENTS AND COMPLETION**
**9**

Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8, 14.2.1.2

PCB
10.3.1

Performance Bond and Payment Bond
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, **11.5**

Permits, Fees and Notices
2.2.2, **3.7**, 3.13, 7.3.6.4, 10.2.2

**PERSONS AND PROPERTY, PROTECTION OF**
**10**

Polychlorinated Biphenyl
10.3.1

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

6

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

Product Data, Definition of
3.12.2

Product Data and Samples, Shop Drawings
3.11, **3.12,** 4.2.7

Progress and Completion
4.2.2, 4.3.3, **8.2,** 9.8, 9.9.1, 14.1.4

Progress Payments
4.3.3, 9.3, **9.6,** 9.8.5, 9.10.3, 13.6, 14.2.3

Project, Definition of the
1.1.4

Project Management Protective Liability Insurance
11.3

Project Manual, Definition of the
1.1.7

Project Manuals
2.2.5

Project Representatives
4.2.10

Property Insurance
10.2.5, **11.4**

PROTECTION OF PERSONS AND PROPERTY
**10**

Regulations and Laws
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2,
13.6, 14.1.1, 14.2.1.3

Rejection of Work
3.5.1, 4.2.6, 12.2.1

Releases and Waivers of Liens
9.10.2

Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
9.8.2, 9.10.1

Representatives
4.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1,
5.1.2, 13.2.1

Resolution of Claims and Disputes
4.4, 4.5, 4.6

Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 10

Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3

Review of Contract Documents and Field
Conditions by Contractor
1.5.2, 3.2, 3.7.3, 3.12.7, 6.1.3

Review of Contractor's Submittals by Owner
and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2.7, 4.2.9, 5.2.1,
5.2.3, 9.2, 9.8.2

Review of Shop Drawings, Product Data and
Samples by Contractor
3.12

Rights and Remedies
1.1.2, 2.3, 2.4, 3.5.1, 3.15.2, 4.2.6, 4.3.4, 4.5, 4.6, 5.3,
5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2,
12.2.4, 13.4, 14

Royalties, Patents and Copyrights
3.17

Rules and Notices for Arbitration
4.6.2

Safety of Persons and Property
10.2, 10.6

Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1,** 10.2, 10.6

Samples, Definition of
3.12.3

Samples, Shop Drawings, Product Data and
3.11, **3.12,** 4.2.7

Samples at the Site, Documents and
**3.11**

Schedule of Values
**9.2,** 9.3.1

Schedules, Construction
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3

Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 4.6.4, 6, 8.3.1, 11.4.7,
12.1.2, 12.2.5

Shop Drawings, Definition of
3.12.1

Shop Drawings, Product Data and Samples
3.11, 3.12, 4.2.7

Site, Use of
**3.13,** 6.1.1, 6.2.1

Site Inspections
1.2.2, 3.2.1, 3.3.3, 3.7.1, 4.2, 9.4.2, 9.10.1, 13.5

Site Visits, Architect's
4.2.2, 4.2.5, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5

Special Inspections and Testing
4.2.6, 12.2.1, 13.5

Specifications, Definition of the
1.1.6

Specifications, The
1.1.1, 1.1.6, 1.1.7, 1.2.2, 1.6, 3.11, 3.12.10, 3.17

Statute of Limitations
4.6.3, 12.2.6, 13.7

Stopping the Work
2.3, 4.3.6, 9.7, 10.3, 14.1

Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4

Subcontractor, Definition of
5.1.1

SUBCONTRACTORS
**5**

Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7

Subcontractual Relations
**5.3,** 5.4, 9.3.1.2, 9.6, 9.10 10.2.1, 11.4.7, 11.4.8, 14.1,
14.2.1, 14.3.2

Submittals
1.6, 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3,
9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3

Subrogation, Waivers of
6.1.1, 11.4.5, 11.4.7

Substantial Completion
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8,** 9.9.1, 9.10.3,
9.10.4.2, 12.2.2, 13.7

Substantial Completion, Definition of
9.8.1

© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**7**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

Case 3:12-cv-00037   Document 26   Filed 05/08/12   Page 39 of 82   PageID #: 748

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.



Substitution of Subcontractors
5.2.3, 5.2.4

Substitution of Architect
4.1.3

Substitutions of Materials
3.4.2, 3.5.1, 7.3.7

Sub-subcontractor, Definition of
5.1.2

Subsurface Conditions
4.3.4

Successors and Assigns
13.2

Superintendent
3.9, 10.2.6

Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3, 6.2.4,
7.1.3, 7.3.6, 8.2, 8.3.1, 9.4.2, 10, 12, 14

Surety
4.4.7, 5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2

Surety, Consent of
9.10.2, 9.10.3

Surveys
2.2.3

Suspension by the Owner for Convenience
14.4

Suspension of the Work
5.4.2, 14.3

Suspension or Termination of the Contract
4.3.6, 5.4.1.1, 11.4.9, 14

Taxes
3.6, 3.8.2.1, 7.3.6.4

Termination by the Contractor
4.3.10, 14.1

Termination by the Owner for Cause
4.3.10, 5.4.1.1, 14.2

Termination of the Architect
4.1.3

Termination of the Contractor
14.2.2

TERMINATION OR SUSPENSION OF THE CONTRACT
14

Tests and Inspections
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2,
9.10.1, 10.3.2, 11.4.1.1, 12.2.1, 13.5

TIME
8

Time, Delays and Extensions of
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1,
7.4.1, 7.5.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2

Time Limits
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4,
8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9,
9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14

Time Limits on Claims
4.3.2, 4.3.4, 4.3.8, 4.4, 4.5, 4.6

Title to Work
9.3.2, 9.3.3

UNCOVERING AND CORRECTION OF WORK
12

Uncovering of Work
12.1

Unforeseen Conditions
4.3.4, 8.3.1, 10.3

Unit Prices
4.3.9, 7.3.3.2

Use of Documents
1.1.1, 1.6, 2.2.5, 3.12.6, 5.3

Use of Site
3.13, 6.1.1, 6.2.1

Values, Schedule of
9.2, 9.3.1

Waiver of Claims by the Architect
13.4.2

Waiver of Claims by the Contractor
4.3.10, 9.10.5, 11.4.7, 13.4.2

Waiver of Claims by the Owner
4.3.10, 9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7,
12.2.2.1, 13.4.2, 14.2.4

Waiver of Consequential Damages
4.3.10, 14.2.4

Waiver of Liens
9.10.2, 9.10.4

Waivers of Subrogation
6.1.1, 11.4.5, 11.4.7

Warranty
3.5, 4.2.9, 4.3.5.3, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2,
13.7.1.3

Weather Delays
4.3.7.2

Work, Definition of
1.1.3

Written Consent
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 15.4.2

Written Interpretations
4.2.11, 4.2.12, 4.3.6

Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5,
5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6,
12.2.2, 12.2.4, 13.3, 14

Written Orders
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2,
14.3.1

© 1997 A I A ®
AIA DOCUMENT A201-1997
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

8

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

## ARTICLE 1   GENERAL PROVISIONS

### 1.1   BASIC DEFINITIONS

**1.1.1   THE CONTRACT DOCUMENTS**

The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements).

**1.1.2   THE CONTRACT**

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

**1.1.3   THE WORK**

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

**1.1.4   THE PROJECT**

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

**1.1.5   THE DRAWINGS**

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

**1.1.6   THE SPECIFICATIONS**

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

**1.1.7   THE PROJECT MANUAL**

The Project Manual is a volume assembled for the Work which may include the bidding requirements, sample forms, Conditions of the Contract and Specifications.

### 1.2   CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS

**1.2.1**   The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are

© 1997   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**9**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

**1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**1.2.3** Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

**1.3 CAPITALIZATION**

**1.3.1** Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles and identified references to Paragraphs, Subparagraphs and Clauses in the document or (3) the titles of other documents published by the American Institute of Architects.

**1.4 INTERPRETATION**

**1.4.1** In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

**1.5 EXECUTION OF CONTRACT DOCUMENTS**

**1.5.1** The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request.

**1.5.2** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

**1.6 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE**

**1.6.1** The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service through which the Work to be executed is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub-subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. All copies of Instruments of Service, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work. The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or material or equipment supplier on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in



© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**10**

**WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.**

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

## ARTICLE 2 OWNER

### 2.1 GENERAL

**2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Subparagraph 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**2.1.2** The Owner shall furnish to the Contractor within fifteen days after receipt of a written request information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER

**2.2.1** The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

**2.2.2** Except for permits and fees, including those required under Subparagraph 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**2.2.3** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**2.2.4** Information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

**2.2.5** Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

### 2.3 OWNER'S RIGHT TO STOP THE WORK

**2.3.1** If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Paragraph 12.2 or persistently fails to carry out Work in



© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**11**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Subparagraph 6.1.3.

### 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

**2.4.1** If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Contractor a second written notice to correct such deficiencies within a three-day period. If the Contractor within such three-day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

### ARTICLE 3  CONTRACTOR

#### 3.1 GENERAL

**3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

**3.1.2** The Contractor shall perform the Work in accordance with the Contract Documents.

**3.1.3** The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

#### 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

**3.2.1** Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Subparagraph 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

**3.2.2** Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

© 1 9 9 7  A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**3.2.3** If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Subparagraphs 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Subparagraphs 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Subparagraphs 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

**3.3 SUPERVISION AND CONSTRUCTION PROCEDURES**

**3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

**3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

**3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

**3.4 LABOR AND MATERIALS**

**3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**3.4.2** The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order.

**3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

**3.5 WARRANTY**

**3.5.1** The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract



© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**13**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**3.6    TAXES**

**3.6.1**    The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

**3.7    PERMITS, FEES AND NOTICES**

**3.7.1**    Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

**3.7.2**    The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

**3.7.3**    It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations. However, if the Contractor observes that portions of the Contract Documents are at variance therewith, the Contractor shall promptly notify the Architect and Owner in writing, and necessary changes shall be accomplished by appropriate Modification.

**3.7.4**    If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

**3.8    ALLOWANCES**

**3.8.1**    The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**3.8.2**    Unless otherwise provided in the Contract Documents:

   .1    allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

   .2    Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances;

   .3    whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect

      (1) the difference between actual costs and the allowances under Clause 3.8.2.1 and

      (2) changes in Contractor's costs under Clause 3.8.2.2.

**3.8.3**    Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

© 1 9 9 7  A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

### 3.9   SUPERINTENDENT

**3.9.1**   The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case.

### 3.10   CONTRACTOR'S CONSTRUCTION SCHEDULES

**3.10.1**   The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**3.10.2**   The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

**3.10.3**   The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

### 3.11   DOCUMENTS AND SAMPLES AT THE SITE

**3.11.1**   The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

### 3.12   SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

**3.12.1**   Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**3.12.2**   Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**3.12.3**   Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**3.12.4**   Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Subparagraph 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

**3.12.5**   The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by



© 1997   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

15

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

**3.12.6** By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice the Architect's approval of a resubmission shall not apply to such revisions.

**3.12.10** The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Subparagraph 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

16

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**3.13 USE OF SITE**

**3.13.1** The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**3.14 CUTTING AND PATCHING**

**3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

**3.15 CLEANING UP**

**3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

**3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

**3.16 ACCESS TO WORK**

**3.16.1** The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

**3.17 ROYALTIES, PATENTS AND COPYRIGHTS**

**3.17.1** The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

**3.18 INDEMNIFICATION**

**3.18.1** To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability insurance purchased by the Contractor in accordance with Paragraph 11.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be



© 1997 A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

17

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

**3.18.2** In claims against any person or entity indemnified under this Paragraph 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE 4   ADMINISTRATION OF THE CONTRACT

### 4.1   ARCHITECT

**4.1.1**   The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

**4.1.2**   Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

**4.1.3**   If the employment of the Architect is terminated, the Owner shall employ a new Architect against whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the former Architect.

### 4.2   ARCHITECT'S ADMINISTRATION OF THE CONTRACT

**4.2.1**   The Architect will provide administration of the Contract as described in the Contract Documents, and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Paragraph 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.

**4.2.2**   The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Subparagraph 3.3.1.

**4.2.3**   The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

© 1997  A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**4.2.4** Communications Facilitating Contract Administration. Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**4.2.6** The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Subparagraphs 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**4.2.7** The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Paragraphs 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Paragraph 7.4.

**4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

**4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**4.2.11** The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor.



© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**19**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Paragraph 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

**4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

**4.2.13** The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

**4.3  CLAIMS AND DISPUTES**

**4.3.1**  Definition.  A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

**4.3.2**  Time Limits on Claims.  Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

**4.3.3**  Continuing Contract Performance.  Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Subparagraph 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

**4.3.4**  Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Paragraph 4.4.

© 1997  A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**20**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

**4.3.5 Claims for Additional Cost.** If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Paragraph 10.6.

**4.3.6** If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Paragraph 4.3.

**4.3.7 CLAIMS FOR ADDITIONAL TIME**

**4.3.7.1** If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary.

**4.3.7.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**4.3.8 Injury or Damage to Person or Property.** If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**4.3.9** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**4.3.10 Claims for Consequential Damages.** The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

.1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Subparagraph 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

**4.4 RESOLUTION OF CLAIMS AND DISPUTES**

**4.4.1 Decision of Architect.** Claims, including those alleging an error or omission by the Architect but excluding those arising under Paragraphs 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a



© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**21**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

Case 3:12-cv-00037   Document 26   Filed 05/08/12   Page 53 of 82   PageID #: 762

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

**4.4.2** The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to evaluate the merits of the Claim or if the Architect concludes that, in the Architect's sole discretion, it would be inappropriate for the Architect to resolve the Claim.

**4.4.3** In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision. The Architect may request the Owner to authorize retention of such persons at the Owner's expense.

**4.4.4** If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, advise the Architect when the response or supporting data will be furnished or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

**4.4.5** The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

**4.4.6** When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

**4.4.7** Upon receipt of a Claim against the Contractor or at any time thereafter, the Architect or the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Architect or the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**4.4.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, by mediation or by arbitration.

**4.5 MEDIATION**

**4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**4.5.3** The parties shall share the mediator's fee and any filing fee equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**4.6    ARBITRATION**
**4.6.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

**4.6.2** Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

**4.6.3** A demand for arbitration shall be made within the time limits specified in Subparagraphs 4.4.6 and 4.6.1 as applicable and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

**4.6.4** Limitation on Consolidation or Joinder. No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.



© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

23

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**4.6.5** Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**4.6.6** Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 5 SUBCONTRACTORS

### 5.1 DEFINITIONS

**5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

### 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK

**5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

**5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**5.2.4** The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

### 5.3 SUBCONTRACTUAL RELATIONS

**5.3.1** By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

24

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by these Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**5.4    CONTINGENT ASSIGNMENT OF SUBCONTRACTS**

**5.4.1**   Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

.1     assignment is effective only after termination of the Contract by the Owner for cause pursuant to Paragraph 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

.2     assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

**5.4.2**   Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

**ARTICLE 6    CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**

**6.1    OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS**

**6.1.1**   The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Paragraph 4.3.

**6.1.2**   When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**6.1.3**   The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

**6.1.4**   Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights which apply to the



© 1997    A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**25**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### 6.2 MUTUAL RESPONSIBILITY

**6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

**6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**6.2.3** The Owner shall be reimbursed by the Contractor for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Contractor. The Owner shall be responsible to the Contractor for costs incurred by the Contractor because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor.

**6.2.4** The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Subparagraph 10.2.5.

**6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Subparagraph 3.14.

### 6.3 OWNER'S RIGHT TO CLEAN UP

**6.3.1** If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

## ARTICLE 7  CHANGES IN THE WORK

### 7.1 GENERAL

**7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**7.1.2** A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

**7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**7.2    CHANGE ORDERS**

**7.2.1**   A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:

.1   change in the Work;

.2   the amount of the adjustment, if any, in the Contract Sum; and

.3   the extent of the adjustment, if any, in the Contract Time.

**7.2.2**   Methods used in determining adjustments to the Contract Sum may include those listed in Subparagraph 7.3.3.

**7.3    CONSTRUCTION CHANGE DIRECTIVES**

**7.3.1**   A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**7.3.2**   A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**7.3.3**   If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1   mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2   unit prices stated in the Contract Documents or subsequently agreed upon;

.3   cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4   as provided in Subparagraph 7.3.6.

**7.3.4**   Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**7.3.5**   A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**7.3.6**   If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Clause 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Subparagraph 7.3.6 shall be limited to the following:

.1   costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2   costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3   rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;



© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

27

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

.4 costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5 additional costs of supervision and field office personnel directly attributable to the change.

**7.3.7.** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**7.3.8** Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

**7.3.9** When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

**7.4    MINOR CHANGES IN THE WORK**

**7.4.1**    The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

**ARTICLE 8    TIME**

**8.1    DEFINITIONS**

**8.1.1**    Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**8.1.2**    The date of commencement of the Work is the date established in the Agreement.

**8.1.3**    The date of Substantial Completion is the date certified by the Architect in accordance with Paragraph 9.8.

**8.1.4**    The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

**8.2    PROGRESS AND COMPLETION**

**8.2.1**    Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**8.2.2**    The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given

© 1997  A I A®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**28**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

Case 3:12-cv-00037   Document 26   Filed 05/08/12   Page 60 of 82   PageID #: 769

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of morgages, mechanic's liens and other security interests.

**8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

### 8.3 DELAYS AND EXTENSIONS OF TIME

**8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, or by delay authorized by the Owner pending mediation and arbitration, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

**8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Paragraph 4.3.

**8.3.3** This Paragraph 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

### ARTICLE 9   PAYMENTS AND COMPLETION

#### 9.1 CONTRACT SUM

**9.1.1** The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

#### 9.2 SCHEDULE OF VALUES

**9.2.1** Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

#### 9.3 APPLICATIONS FOR PAYMENT

**9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for operations completed in accordance with the schedule of values. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.

**9.3.1.1** As provided in Subparagraph 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**9.3.1.2** Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.



© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**29**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

### 9.4 CERTIFICATES FOR PAYMENT

**9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Subparagraph 9.5.1.

**9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

### 9.5 DECISIONS TO WITHHOLD CERTIFICATION

**9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Subparagraph 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Subparagraph 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

30

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Subparagraph 3.3.2, because of:

.1 defective Work not remedied;

.2 third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

.3 failure of the Contractor to make payments properly to Subcontractors for labor, materials or equipment;

.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5 damage to the Owner or another contractor;

.6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7 persistent failure to carry out the Work in accordance with the Contract Documents.

**9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**9.6 PROGRESS PAYMENTS**

**9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**9.6.2** The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**9.6.4** Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

**9.6.5** Payment to material suppliers shall be treated in a manner similar to that provided in Subparagraphs 9.6.2, 9.6.3 and 9.6.4.

**9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.



© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**31**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

### 9.7 FAILURE OF PAYMENT

**9.7.1** If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

### 9.8 SUBSTANTIAL COMPLETION

**9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**9.8.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

### 9.9 PARTIAL OCCUPANCY OR USE

**9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Clause 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and

© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Subparagraph 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

**9.10 FINAL COMPLETION AND FINAL PAYMENT**

**9.10.1** Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Subparagraph 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**9.10.2** Neither final payment nor any remaining retainage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that



© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**33**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

.1 liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

.2 failure of the Work to comply with the requirements of the Contract Documents; or

.3 terms of special warranties required by the Contract Documents.

**9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10  PROTECTION OF PERSONS AND PROPERTY

**10.1**   **SAFETY PRECAUTIONS AND PROGRAMS**

**10.1.1**  The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

**10.2**   **SAFETY OF PERSONS AND PROPERTY**

**10.2.1**  The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

.1 employees on the Work and other persons who may be affected thereby;

.2 the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

.3 other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**10.2.2**  The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**10.2.3**  The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**10.2.4**  When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**10.2.5**  The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Clauses 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Paragraph 3.18.

© 1997   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**34**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**10.2.7** The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

**10.3  HAZARDOUS MATERIALS**

**10.3.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**10.3.2** The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

**10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

**10.4** The Owner shall not be responsible under Paragraph 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

**10.5** If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

**10.6  EMERGENCIES**

**10.6.1** In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or



© 1997   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Paragraph 4.3 and Article 7.

## ARTICLE 11   INSURANCE AND BONDS

**11.1   CONTRACTOR'S LIABILITY INSURANCE**

**11.1.1**   The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1   claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

.2   claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

.3   claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

.4   claims for damages insured by usual personal injury liability coverage;

.5   claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

.6   claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

.7   claims for bodily injury or property damage arising out of completed operations; and

.8   claims involving contractual liability insurance applicable to the Contractor's obligations under Paragraph 3.18.

**11.1.2**   The insurance required by Subparagraph 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

**11.1.3**   Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Paragraph 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Subparagraph 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

**11.2   OWNER'S LIABILITY INSURANCE**

**11.2.1**   The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

**11.3   PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE**

**11.3.1**   Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner

©1997   AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

36

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Clauses 11.1.1.2 through 11.1.1.5.

**11.3.2** To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

**11.3.3** The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Paragraph 11.1.

**11.4 PROPERTY INSURANCE**
**11.4.1** Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

**11.4.1.1** Property insurance shall be on an all-risk or equivalent policy form and shall include, without limitation, insurance against the risks of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

**11.4.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**11.4.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**11.4.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

**11.4.1.5** Partial occupancy or use in accordance with Paragraph 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial

© 1997 A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**37**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

**11.4.2  Boiler and Machinery Insurance.** The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

**11.4.3  Loss of Use Insurance.** The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

**11.4.4**  If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

**11.4.5**  If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**11.4.6**  Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Paragraph 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

**11.4.7  Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

38

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**11.4.8** A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Subparagraph 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**11.4.9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Paragraph 4.6. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

**11.4.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection be made, the dispute shall be resolved as provided in Paragraphs 4.5 and 4.6. If the Owner as fiduciary so elects, the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

**11.5 PERFORMANCE BOND AND PAYMENT BOND**

**11.5.1** The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

**11.5.2** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

**ARTICLE 12 UNCOVERING AND CORRECTION OF WORK**

**12.1 UNCOVERING OF WORK**

**12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**12.1.2** If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.



© 1 9 9 7 A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**39**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

## 12.2 CORRECTION OF WORK

### 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION

**12.2.1.1** The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### 12.2.2 AFTER SUBSTANTIAL COMPLETION

**12.2.2.1** In addition to the Contractor's obligations under Paragraph 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Subparagraph 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Paragraph 2.4.

**12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

**12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Paragraph 12.2.

**12.2.3** The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

**12.2.5** Nothing contained in this Paragraph 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Subparagraph 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## 12.3 ACCEPTANCE OF NONCONFORMING WORK

**12.3.1** If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

40

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

## ARTICLE 13  MISCELLANEOUS PROVISIONS

### 13.1  GOVERNING LAW

**13.1.1**  The Contract shall be governed by the law of the place where the Project is located.

### 13.2  SUCCESSORS AND ASSIGNS

**13.2.1**  The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Subparagraph 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**13.2.2**  The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### 13.3  WRITTEN NOTICE

**13.3.1**  Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

### 13.4  RIGHTS AND REMEDIES

**13.4.1**  Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**13.4.2**  No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

### 13.5  TESTS AND INSPECTIONS

**13.5.1**  Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

**13.5.2**  If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Subparagraph 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Subparagraph 13.5.3, shall be at the Owner's expense.



© 1997  A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**41**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**13.5.3**  If such procedures for testing, inspection or approval under Subparagraphs 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

**13.5.4**  Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**13.5.5**  If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**13.5.6**  Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

**13.6    INTEREST**
**13.6.1**  Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

**13.7    COMMENCEMENT OF STATUTORY LIMITATION PERIOD**
**13.7.1**  As between the Owner and Contractor:
  .1  Before Substantial Completion. As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;
  .2  Between Substantial Completion and Final Certificate for Payment. As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and
  .3  After Final Certificate for Payment. As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Paragraph 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Paragraph 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

**ARTICLE 14  TERMINATION OR SUSPENSION OF THE CONTRACT**
**14.1    TERMINATION BY THE CONTRACTOR**
**14.1.1**  The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:
  .1  issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;
  .2  an act of government, such as a declaration of national emergency which requires all Work to be stopped;

© 1 9 9 7   A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

42

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

**.3** because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Subparagraph 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

**.4** the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Subparagraph 2.2.1.

**14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Paragraph 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**14.1.3** If one of the reasons described in Subparagraph 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

**14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Subparagraph 14.1.3.

**14.2 TERMINATION BY THE OWNER FOR CAUSE**

**14.2.1** The Owner may terminate the Contract if the Contractor:

**.1** persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

**.2** fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

**.3** persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

**.4** otherwise is guilty of substantial breach of a provision of the Contract Documents.

**14.2.2** When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

**.1** take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

**.2** accept assignment of subcontracts pursuant to Paragraph 5.4; and

**.3** finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**14.2.3** When the Owner terminates the Contract for one of the reasons stated in Subparagraph 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.



© 1 9 9 7  A I A ®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**43**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

The American Institute of Architects is pleased to provide this sample copy of an AIA Contract Document for educational purposes. Created with the consensus of contractors, attorneys, architects and engineers, the AIA Contract Documents represent over 110 years of legal precedent.

**14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

**14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE**
**14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Subparagraph 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

    .1 that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

    .2 that an equitable adjustment is made or denied under another provision of the Contract.

**14.4 TERMINATION BY THE OWNER FOR CONVENIENCE**
**14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

    .1 cease operations as directed by the Owner in the notice;

    .2 take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

    .3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.



© 1997 AIA®
**AIA DOCUMENT A201-1997**
GENERAL CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**44**

9/97 

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

Reproduced with permission of The American Institute of Architects, 1735 New York Avenue NW, Washington D.C. 20006. For more information or to purchase AIA Contract Documents, visit www.aia.org.

**Performance-Payment Bond**
**Dual Obligee**
Under Section 202 of the Housing Act 1959
and Section 811 of the National Affordable Housing Act of 1990

**U.S. Department of Housing**
**and Urban Development**
Office of Housing

# COPY

| Project Number: | Project Name: Dalewood Estates-202 Senior Housing | Location: Albany, GA |
|---|---|---|

Know all men by these presents: That we (Name of Contractor)  Community  Solutions for Every Problem (SfEP), Inc.
061-EE125 hereinafter called "Principal" and
a (Corporation, Partnership, or Individual)  Corporation  hereinafter
(Surety) International Fidelity Ins. Co. of, State of, New Jersey  hereinafter
called the "Surety" are held and firmly bound unto (Owner)  Dalewood Estates Senior Housing, Inc.
of, _____ hereinafter called "Owner" and unto the Secretary of Housing and Urban
Development, hereinafter called "HUD" as their respective interests may appear as Obligees in the penal sum of
$3,299,036.06 Dollars ($3,299,036).06 lawful money of the United States, for the payment of which sum well and
truly to be made, we bind ourselves, our heirs, executors, administrators, and successors , jointly and severally, firmly by
these presents.

**The Condition Of This Obligation** is such that Whereas the Principal entered into a certain contract with the
Owner, dated the_____day of _____ 20___ a copy of which is hereto attached and made a part
hereof for the construction of:  Dalewood Estates – 202 Senior Housing Community

# COPY

And Whereas, HUD has agreed to lend to Owner a sum of money to be secured by a mortgage on said project and to
be used in making payment under said contract, and desires protection as its interest may appear, in event of default by
Principal under said contract, said protection to be subject to the performance by the Obligees, or either of them, of the
obligations to Principal in connection with said Contract.

Now Therefore, if the Principal shall well, truly and faithfully perform its duties, all the undertakings, covenants, terms,
conditions, and agreements of said Contract during the original term thereof, and any authorized extension or
modification thereof, with or without notice to the Surety, and if he shall satisfy all claims and demands incurred under
such contract, and fully indemnify and save harmless the Obligees from all costs and damages which they may suffer by
reason of failure to do so, and shall reimburse and repay the Obligees all outlay and expense which they may incur in
making good any default, and shall promptly make payment to all persons, firms, subcontractors, and corporations
furnishing materials for or performing labor in the prosecution of the work provided for in such contract, and any
authorized extension or modification thereof, including all amounts due for materials, lubricants, oil, gasoline, coal and
coke, repairs on machinery, equipment and tools, consumed or used in connection with the construction of such work,
and all insurance premiums on said work, and for all labor, performed in such work whether by subcontractor or
otherwise, then this obligation shall be void; otherwise to remain in full force and effect.

Provided, Further, that the said Surety, for value received hereby stipulates and agrees that no change, extension of
time, alteration or addition to the terms of the contract or to the work to be performed thereunder or the specifications
accompanying the same shall in any wise affect its obligation on this bond, and it does hereby waive notice of any such
change, extension of time, alteration or addition to the terms of the contract or to the work or to the specifications,

form HUD-92452-CA (4/92)
ref. Handbook 4571.4 & 4571.5

**EXHIBIT**
**B**
tabbies

Provided, **Further,** that no final settlement between the Owner and the Contractor shall abridge the right of any beneficiary hereunder, whose claim may be unsatisfied.

In **Witness Whereof,** this instrument is executed in six (6) counterparts, each one of which shall be deemed an original, this the _____ day of September, 2006.

ATTEST:

Solutions for Every Problem (SfEP), Inc.
_____
(Principal)

_____
(Principal) Secretary

By    COPY _____

_____
(Address – ZIP Code)

International Fidelity Insurance Company
_____
(Surety)

(SEAL)

ATTEST:

By    _____
(Attorney-in Fact)

_____
(Address – ZIP Code)

_____
(Surety) Secretary

(SEAL)

_____
Witness as to Surety

_____
(Address – ZIP Code)

COPY

NOTE: Date of Bond must not be prior to date of Contract. If Contractor is Partnership, all partners must execute Bond.

form HUD-92452-CA (4/92)
ref. Handbook 4571.4 & 4571.5

Page 2 of 2

Tel (973) 624-7200

# POWER OF ATTORNEY
# INTERNATIONAL FIDELITY INSURANCE COMPANY

HOME OFFICE: ONE NEWARK CENTER, 20TH FLOOR
NEWARK, NEW JERSEY 07102-5207

KNOW ALL MEN BY THESE PRESENTS: That INTERNATIONAL FIDELITY INSURANCE COMPANY, a corporation organized and existing under the laws of the State of New Jersey, and having its principal office in the City of Newark, New Jersey, does hereby constitute and appoint

BOB L. STOUT, JAMES E. GARDNER, FRED FISHER, ANGELA BOH, BETTY CAPPS,
JAMES E. HARWELL, G.E. THORNTON, J. CARLTON SMITH, JR., CRAIG M. WHITLOW,
DAVID BENNETT, MASON G. POPE
Nashville, TN.



its true and lawful attorney(s)-in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise, and the execution of such instrument(s) in pursuance of these presents, shall be as binding upon the said INTERNATIONAL FIDELITY INSURANCE COMPANY, as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal office.

This Power of Attorney is executed, and may be revoked, pursuant to and by authority of Article 3-Section 3, of the By-Laws adopted by the Board of Directors of INTERNATIONAL FIDELITY INSURANCE COMPANY at a meeting called and held on the 7th day of February, 1974.

The President or any Vice President, Executive Vice President, Secretary or Assistant Secretary, shall have power and authority

(1) To appoint Attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the Seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof and,

(2) To remove, at any time, any such attorney-in-fact and revoke the authority given.

Further, this Power of Attorney is signed and sealed by facsimile pursuant to resolution of the Board of Directors of said Company adopted at a meeting duly called and held on the 29th day of April, 1982 of which the following is a true excerpt.

Now therefore the signatures of such officers and the seal of the Company may be affixed to any such power of attorney or any certificate relating thereto by facsimile, and any such power of attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by facsimile signatures and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.



IN TESTIMONY WHEREOF, INTERNATIONAL FIDELITY INSURANCE COMPANY has caused this instrument to be signed and its corporate seal to be affixed by its authorized officer, this 29th day of August, A.D. 2003.

INTERNATIONAL FIDELITY INSURANCE COMPANY

STATE OF NEW JERSEY
County of Essex

Secretary

On this 29th day of August, 2003, before me came the individual who executed the preceding instrument, to me personally known, and, being by me duly sworn, said that he is the therein described and authorized officer of the INTERNATIONAL FIDELITY INSURANCE COMPANY; that the seal affixed to said instrument is the Corporate Seal of said Company; that the said Corporate Seal and his signature were duly affixed by order of the Board of Directors of said Company.



IN TESTIMONY WHEREOF, I have hereunto set my hand affixed my Official Seal, at the City of Newark, New Jersey the day and year first above written.

A NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Nov. 21, 2005

## CERTIFICATION

I, the undersigned officer of INTERNATIONAL FIDELITY INSURANCE COMPANY do hereby certify that I have compared the foregoing copy of the Power of Attorney and affidavit, and the copy of the Section of the By-Laws of said Company as set forth in said Power of Attorney, with the ORIGINALS ON IN THE HOME OFFICE OF SAID COMPANY, and that the same are correct transcripts thereof, and of the whole of the said originals, and that the said Power of Attorney has not been revoked and is now in full force and effect.

IN TESTIMONY WHEREOF, I have hereunto set my hand this _____ day of _____

Assistant Secretary

**I  D Representative's**
**ip Report (Multifamily)**

**U.S. Department of Housing**
**and Urban Development**
**Office of Multifamily Housing**

| Project Name: | Project No: | Schedule Progress: | Actual Progress: | Date of Visit: |
|---|---|---|---|---|
| Dalewood | 061-EE125 | 100% | 88% | 02-19-09 |

| No. of Buildings: | No. Dwelling Units: | Locality: | Contractor: |
|---|---|---|---|
| 7 | 50 | 824 Willie Pitts Road | STEP (Solutions to Environmental Problems) |

**A. Evaluation: Details - Concerning:**
1. Contractor's organization, operations and supervision, disputes, etc.
2. Architect's supervision and services
3. Special circumstances, occupancy, delays, claims
4. Non-compliance in the work
5. Payments to the contract; Labor and EEO Provisions.

1.Arrived on site and met with John Clemons, superintendent, for a tour. Spoke to Zane with the city and the electrical lines have not been moved due to conflict with city not being able to have power cut off due to it being connected to a major sub station. Trench with piping is completed just waiting on moving of lines and setting the main transformer pads and transformers located behind each building. HTS has already pulled the conduit at the curb crossings. Curb and gutter crew was on site and had installed 1632sq.ft of curbing since last visit for a total of 2425sq.ft for the entire project. Crew leader stated they should be completed by next Friday. After touring the site I met with Andy Wood, project manager, John Rivers, architect and his assistant at the project office located down the street. The change orders have been completed and sent to HUD. They stated they were told by HUD to bypass me and send directly to HUD to speed up the approval process. AW stated he will connect the power to all buildings within 2-3 weeks if the owners get it transferred into their names and the city can get it scheduled within that time. AW stated he would install all exterior air condensers at end of project due to vandalism in the area. AW stated he will begin landscaping around the installation of curb and gutter.

**B1, B2, B3, B4, B5, B6, and Interior of All units:** Kitchen/bath sinks and toilets have been installed at 100% completion. Paint needs touch up. Thermostats moved in walls are 100%. All cabinets (kitchen & bath 100%). All light fixtures 100%. Mirrors installed. No carpet.

**B1 Exterior:** No change on sewer line invert leaving building to the manhole invert. Architect has provided the change orders needed to complete the sewer and pump station requests. They are also providing a plan for installation of a commercial double pump with a back flow preventer attached to it. The sewer lines will not have to be relocated if this system is installed. AW stated this would also allow prevention of a back up of sewer into individual units in the future if a problem arises.

The city is requiring that the retention pond at building one be certified which means it must have a permanent lanklok 450 turf reinforcement mat. AW stated it has been ordered and will be installed.

**B5 Exterior:** The sewer line at building 5 has been connected around the storm drain in the parking area in front of the building.

**Community Building:** Interior: Sinks and toilets have been installed. Paint needs touch up. All cabinets 100%. All light fixtures 100%. Mirrors installed. No carpet. Vinyl has been installed in the foyer entrance.

2 Architect was not on site. Previously asked for reports and none have been received since March 08. Architect performance and services are poor. His not responding to contractors request and not supplying the contractor with plans and designs for changes have delayed this project.

3. The special circumstances, occupancies at this time are the RFI request by the contractor sent to the architect waiting on his response. Those include the following items needing direction:

Status of City required backflow preventer at Building 1. Waiting on change order approval. The water to the site continues to be delayed (previously due to problem with sewer lines and elevations) and now they are waiting on HUD approval for the backflow preventer change order to be approved. City, per Zane, is waiting on the payment of the meters in order to connect them to the buildings.

Status of electric service to the site. Completed piping, but not the actual wiring.

Curb and gutters being marked to put in primary & secondary utility lines. Working on while on site and had installed approx. ½ of curb and gutter for the entire project with no base or asphalt installed on the road ways.

Need product description clarified on plans for water/rain problem in breezeways facing the east. No action as of 02-19-09.

Alarm system. Received an 11/13/08 letter from architect stating he approved the relocation of the distress signal device as installed. Not installed as of 02-19-09.

At present these are the following change orders I have initialed that have been submitted for approval:
9/25: RPZ backflow $10,018.66
7/24: Patio water problems, $17,550.00
7/24: Clubhouse Ceiling & window heights, changed handicap unit from Bldg.#2 to Bldg. # 6, move Building # 6 off sewer line, $0.00 structural changes per Fire Marshall $2613.00, flip tub in managers unit $1320.00, Fire Alarm system changes per Fire Marshall, $22756.23.
2/19/09 Find attached a list of change orders that were sent directly to HUD for approval.
*** There has been another problem that was noted at the meeting today concerning the gas line easement. They had a gas representative on site yesterday and he notified the project manager that the gas company requires 4 ft. coverage above the pipe at the crossovers in two different locations on this site and both are designed at 2.5 ft. of coverage over the pipe. The architect stated the gas company has had the plans with this design on them for 8 months and no one has notified them of this change that needs to be made. He will be providing a change order to install concrete under the road at the crossovers and also concrete over the pipes and will submit to HUD:

**EXHIBIT**

4. Items of non compliance found on this visit are:

There is no brick work installed around the entrance to the breezeways in front of buildings 1,2,5 & 6 which is what the plans call for in all type "A" buildings (plans pg.A1.01, A4.01,02,03). Brick work is only at the back of breezeways on those buildings. On buildings 3 (type "B") & 4 (type "C") no brick work is required around front or back of breezeways per plans. Not addressed by contractor as of 02-19-09.

Thermostats in all units in all buildings have been hung at 60" and should have been hung at 48" per page M300 on the plans. HVAC contractor agreed to reset all thermostats. As of today 02-19-09 all thermostats have been moved and covering installed.

GFI breaker not installed in breezeways & electrical contractor stated they were on the main breaker to the building which was acceptable. In Building 5 all electrical receptacles are set at 49.5" & on page E300 & 400 the GFI in kitchens require them to be set at 48". As of today 02-19-09 no changes to the receptacles.

At Buildings 3, 4 & 6 a 10' crack was found in the concrete in the breezeway & it was noted to contractor & he stated he would have it pulled up and new concrete installed. This has not been corrected/repaired on this visit 02-19-09 and the crack was checked this visit and seems to be getting larger.

At Building 5 the paint on breezeway needed to be completed on exterior. Not completed as of today 02-19-09.

In Handicap Unit 3 at Building 5 the following were found to be incorrect according to A2.05 page per plans: Water controls in shower were centered and not put to side at shower entrance to prevent scalding tenant. Vanity with sink in unit doesn't have knee space as per plans, No grab bar installed at side of toilet, no medicine cabinet installed at 44" hgt., no adjustable shelving in closets, kitchen cabinets are set but should be set at 34" hgt. All ese items were brought to contractor attention and he agreed to correct them. All three Handicap Units on site will be inspected thoroughly on the rest of the inspections to make sure they adhere to code. As of today 02-19-09 no corrections have been made.

5. Payments to contractor have been paid. Today a pay request in the net amount of $237,399.48 was presented for payment and approved by the architect. He stated he didn't want to cut the draw because there was retainage left in the job to cover any unforeseen problems. I made adjustments to the draw at line item 2 Roads & Walks due to the request being $30,000 for this draw and they had already drawn $35,000 on last draw. This would have given them a total of $65,000 drawn against this item and after examining the site they had only installed ½ the curb and gutter and no base or asphalt had been installed. This draw would have only left $72,400 to complete the other ½ curb and gutter for the entire project and all base and asphalt. Two employee interviews were conducted and a copy is attached. All EEO posters have been posted. Thirteen photos were taken and copies are attached.

Next scheduled pay request meeting: 03-05-09 @ 1:30pm.

START DATE: 12/13/2007   COMPLETION DATE: 9/31/2008
All items must be covered in this report and all adverse findings shall be discussed with Project Architect

B. All items must be covered in this report and all adverse findings shall be discussed with Project Architect.

| C. Trip Included Examination of 2, 3, 4, 5, 6 and clubhouse | Examination of | Observation of Buildings 1, | Dwelling Units in Bldgs. Nos: 50 | |
|---|---|---|---|---|
| D. Arrived: (date) 02-19-09 | (hour) 1:00pm | Departed: (date) 02-19-09 | (hour) 3:30PM | |

| Report No: 28 | Name & Signature of HUD Representative: | Name & Signature of Construction Manager |
|---|---|---|
| Date: 02-19-09 | x *Ingie Sweitt* | x |



IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE

MAY 01 2012

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

SOLUTIONS TO EVERY PROBLEM, INC.,   *
                                                     *

      Plaintiff,                           *

                                           *

v.                                           *    CIVIL ACTION FILE NO.
                                          *    2011CV209501

DALEWOOD ESTATES SENIOR           *

HOUSING, INC. and INTERNATIONAL    *

FIDELITY INSURANCE COMPANY,       *

                                           *

      Defendants.                        *

## RULE NISI

      To all parties: You are hereby notified that your case will appear on Judge Shawn Ellen

LaGrua's Default Calendar on **MAY 24, 2012 at 10:30 a.m.** in **Courtroom 8D, 185 Central**

**Avenue, S.W., Atlanta, Georgia 30303**. The Court notes that although service was perfected, a

responsive pleading has not been filed by Defendant Dalewood Estates Senior Housing, Inc. in

this matter. The Defendant(s) are directed to appear and show cause why an entry of default

should not be entered against the Defendant(s) for failure to respond to the Complaint/Petition.

All parties are directed to appear and failure to appear once your case is called will result in the

entry of default or dismissal for failure to prosecute.

      SO ORDERED this 1st day of MAY, 2012.

                                        JUDGE SHAWN ELLEN LaGRUA
                                        Fulton County Superior Court
                                        Atlanta Judicial District

<u>Distributed to:</u>
Philip E. Beck, Esq.                  Greg T. Bailey, Esq.
pebeck@smithcurrie.com            attygregtbailey@msn.com

P. Keith Lichtman, Esq.
klichtman@mpdlegal.com