IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| INTERNATIONAL FIDELITY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | Case No.  3:12-CV-37 |
| Plaintiff, | ) | |
| v. | ) | Evidentiary Hearing Requested |
| | ) | |
| SOLUTIONS TO EVERY PROBLEM, INC., | ) | |
| BASIL A. SKELTON, JEFFREY L. WOOD, | ) | |
| IDA SALISA WOOD, NICKAJACK | ) | |
| PROPERTIES, LLC, and | ) | |
| COOL SPORTS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

---

**INTERNATIONAL FIDELITY INSURANCE COMPANY'S REPLY TO RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiff International Fidelity Insurance Company ("International Fidelity"), by and through counsel, respectfully submits this Reply to the Response in Opposition to International Fidelity's Motion for Preliminary Injunction that was submitted by Defendants Solutions to Every Problem, Inc. ("STEP"), Basil A. Skelton (individually and in his capacity as the trustee of Basil A. Skelton's Living Trust), Jeffrey L. Wood, Ida Salisa Wood, Nickajack Properties, LLC, and Cool Sports, LLC (Mr. Skelton, Mr. Wood, Ms. Wood, Nickajack Properties, LLC, and Cool Sports, LLC collectively, the "Indemnitors").

I. **INTRODUCTION AND SUMMARY OF ARGUMENT IN REPLY**

STEP's and the Indemnitors' response to International Fidelity's Motion for Preliminary Injunction and their request that this litigation be stayed pending the resolution of a separate state

court action reflect their apparent hope that the Court will ignore the clear and unambiguous terms of the Agreement of Indemnity at issue (the "Indemnity Agreement") and allow them to shirk their contractual duty to collateralize International Fidelity pending the resolution of International Fidelity's separate claim against them for indemnification.

In short, STEP and the Indemnitors are trying to convince the Court that (1) the Indemnitors are not obligated to comply with their contractual duty to deposit collateral with International Fidelity (a) because they contest the claims that Dalewood Estates Senior Housing, Inc. ("Dalewood") asserted against STEP and International Fidelity and (b) because STEP and the Indemnitors contest their obligation to indemnify International Fidelity for the sums it has incurred and continues to incur while resolving Dalewood's claim and (2) STEP's potential liability to Dalewood must be fully litigated in a separate pending state court action before this Honorable Court may resolve STEP's and the Indemnitors' liability to International Fidelity under the Indemnity Agreement. Each of these contentions lacks merit and are belied by the clear and unambiguous terms of the Indemnity Agreement.

As explained in more detail below, STEP's actual liability to Dalewood under the contract between them (the "Bonded Contract") is absolutely irrelevant to the duty of STEP and the Indemnitors to collateralize International Fidelity in relation to the liability that Dalewood has asserted against International Fidelity. The Indemnity Agreement expressly requires STEP and the Indemnitors to fully collateralize International Fidelity **as soon as liability is asserted against International Fidelity**. Neither STEP's actual liability to Dalewood under the Bonded Contract nor the actual liability of STEP and the Indemnitors to International Fidelity for indemnity is a condition to the duty of STEP and the Indemnitors to collateralize International Fidelity. Though International Fidelity denies that any valid defenses exist, STEP's and the

Indemnitors' purported defenses to International Fidelity's indemnity claim are also irrelevant to International Fidelity's claim for specific performance of the duty of STEP and the Indemnitors to collateralize International Fidelity pending the resolution of its indemnity claim, which is the subject of International Fidelity's Motion for Preliminary Injunction. Courts throughout the United States have entered preliminary injunctions against principals/indemnitors who have asserted similar defenses.

Moreover, to the extent that the Court is inclined to consider any purported defenses STEP and the Indemnitors may possess relative to International Fidelity's indemnity claim while ruling upon International Fidelity's Motion for Preliminary Injunction, STEP's actual liability to Dalewood is also irrelevant to International Fidelity's indemnity claim. The duty of STEP and the Indemnitors to indemnify International Fidelity is not in any way conditioned upon STEP's actual liability to Dalewood. To the contrary, the Indemnity Agreement expressly obligates STEP and the Indemnitors to indemnify International Fidelity for all payments it made in the good faith belief that International Fidelity was liable for the payments or that it was necessary or expedient to make such payments — **whether or not such liability, necessity or expediency actually existed**. The Indemnity Agreement also provided a procedure through which STEP and the Indemnitors could have required International Fidelity to dispute Dalewood's claim instead of taking over and completing STEP's unfinished work following Dalewood's default and termination of STEP. However, STEP and the Indemnitors undisputedly failed to adhere to that procedure, and the Indemnity Agreement authorized each action that International Fidelity has taken in response to Dalewood's claim. Under similar circumstances, courts throughout the United States have held that the principal's and/or the surety's actual liability to bond claimants is not determinative of the duty of the principal and indemnitors to indemnify the surety for

payments made under the belief that the surety was liable for such payments or under the belief that such payments were necessary or expedient — even if the surety was wrong in its belief. Therefore, STEP and the Indemnitors are obligated to collateralize International Fidelity pending the resolution of International Fidelity's indemnity claim, and STEP's and the Indemnitors' purported defenses to International Fidelity's indemnity claim simply lack merit.

In reality, both International Fidelity's claim for specific performance of the collateral security provision of the Indemnity Agreement and International Fidelity's claim for indemnification are ripe for adjudication in this action, and the resolution of those claims is in not in any way dependent upon the resolution of STEP's claims against Dalewood. Because the federal government and the State of Georgia are separate sovereigns, the pendency of STEP's claims against International Fidelity in the Georgia state court action does not in any way hinder this Honorable Court's ability to grant the relief that International Fidelity is requesting. Even if STEP prevails on its claims against Dalewood in the separate Georgia state court action, by default or otherwise, STEP and the Indemnitors will remain obligated to collateralize and indemnify International Fidelity. Moreover, this action is the only action in which the Indemnitors are named. Because International Fidelity has satisfied each prong of the 4-part test for the issuance of a preliminary injunction, the Court should enter a preliminary injunction compelling STEP and the Indemnitors to deposit collateral with International Fidelity in the amount of $427,556.46, which equals the amount of the International Fidelity's total reserve in relation to the liability that has been asserted against it.

## II. ARGUMENT IN REPLY

**A. The Indemnity Agreement requires STEP and the Indemnitors to collateralize International Fidelity as soon as liability exists <u>or is asserted against International Fidelity,</u> which negates their assertion that their duty to collateralize International Fidelity is somehow conditioned upon STEP's actual liability to Dalewood.**

Because the Indemnity Agreement clearly and unambiguously requires STEP and the Indemnitors to collateralize International Fidelity as soon as liability is asserted against it, STEP's actual liability to Dalewood is irrelevant to the duty of STEP and the Indemnitors to collateralize International Fidelity in relation to the liability that Dalewood has asserted against International Fidelity. In that regard, Paragraph SECOND of the Indemnity Agreement provides, in pertinent part:

> [STEP] and Indemnitors shall deposit with [International Fidelity] on demand an amount of money or other collateral security acceptable to [International Fidelity], **as soon as liability exists <u>or is asserted against</u> [International Fidelity]**, whether or not [International Fidelity] shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by [International Fidelity]. [International Fidelity] shall have the right to use the deposit, or any portion thereof, in payment or settlement of any liability, loss, or expense for which [STEP] and Indemnitors would be obligated to indemnify [International Fidelity] under the provisions of this Agreement.

(Doc. 20-1) (emphasis added). Thus, pursuant to Paragraph SECOND of the Indemnity Agreement, the duty of STEP and the Indemnitors to collateralize International Fidelity is not conditioned upon STEP's or International Fidelity's actual liability to Dalewood. To the contrary, STEP and the Indemnitors have a contractual duty to collateralize International Fidelity — as soon as liability is asserted against International Fidelity — regardless of whether STEP or International Fidelity face actual liability to Dalewood.

As International Fidelity has explained in its prior Memorandum of Law, federal courts interpreting Tennessee law have noted on multiple occasions that "[i]ndemnity agreements are enforceable under Tennessee law, and like other contracts, **they are to be enforced according to**

their plain and unambiguous terms." *U.S. Fid. & Guar. Co. v. Weed*, 2009 WL 77262, *3-*4 (M.D. Tenn. Jan. 8, 2009); *Ohio Farmers Ins. Co. v. Special Coatings, LLC*, 2008 WL 5378079, *16-*17 (M.D. Tenn. Dec. 28, 2008) (emphasis added). When interpreting an indemnity agreement under Tennessee law, "[t]he courts should give the words of the indemnity agreement their natural and ordinary meanings, **and must give meaning and effect to every provision of the agreement**." *Long v. McAllister*, 221 S.W.3d 1, 11 (Tenn. Ct. App. 2006) (emphasis added) (internal citations omitted). In fact, this Honorable Court has previously recognized that:

> In Tennessee, there is no case law to suggest indemnity agreements would be read any differently than regular contracts. Thus, unless the context otherwise requires, indemnity agreements should be applied according to their terms. While the terms of a contract are generally a question of fact, interpretation of the contract is a question of law.

*Lyndon Prop. Ins. Co. v. Houston Barnes, Inc.*, 2005 WL 1840254, *4 (E.D. Tenn. July 26, 2005). Furthermore, like any other contract, "the clear language must be interpreted and enforced as written **even though it contains terms which may be considered harsh and unjust by a court**." *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 511 (Tenn. 2001) (emphasis added).

Consequently, the suggestion by STEP and the Indemnitors that they have no duty to collateralize International Fidelity because they possess defenses to Dalewood's claim that may ultimately be resolved in the pending Georgia action simply lacks merit and contradicts the clear and unambiguous terms of the Indemnity Agreement. Regardless of the validity of Dalewood's claim against STEP and/or International Fidelity, STEP and the Indemnitors are contractually obligated to deposit collateral with International Fidelity in the amount of $427,556.46, which equals the amount of the International Fidelity's total reserve in relation to the liability that

Dalewood has asserted against International Fidelity.  Any other interpretation of Paragraph

SECOND of the Indemnity Agreement would be inconsistent with Tennessee law.

**B. STEP's and the Indemnitors' purported defenses to International Fidelity's separate indemnity claim are irrelevant to International Fidelity's claim for specific performance of the Indemnity Agreement's collateral security provision as courts throughout the United States have held that a collateral security provision is specifically enforceable even if the principal/indemnitors contend that they possess defenses to the underlying bond claims and/or contend that the surety has acted in bad faith in the investigation/resolution of those bond claims.**

As noted above, STEP and the Indemnitors have erroneously suggested that the Court

should not enter a preliminary injunction in International Fidelity's favor because (1)

Dalewood's claim against STEP and/or International Fidelity is invalid and (2) International

Fidelity has acted in bad faith by taking over and completing STEP's unfinished work under the

Bonded Contract instead of denying Dalewood's claim based upon a number of purported

defenses possessed by STEP.  As explained above, STEP and the Indemnitors are obligated to

collateralize International Fidelity regardless of the validity of Dalewood's claims.  Moreover,

International Fidelity's purported bad faith in the investigation/resolution of Dalewood's claim is

irrelevant to the duty of STEP and the Indemnitors to fully collateralize International Fidelity

pending the resolution of International Fidelity's indemnity claim.[1]

In fact, a number of courts throughout the United States have held that the surety's

purported bad faith in the investigation/resolution of bond claims is irrelevant to the duty to

collateralize the surety.  For example, in *Great Am. Inc. Co. v. Conart, Inc.*, 2006 WL 839197

---

[1] Of course, a surety's decision to settle/pay a claim over the principal's objection and despite purported defenses does not constitute evidence of bad faith as a matter of law.  *Hartford Cas. Ins. Co. v. Hyperion Const., LLC*, 2012 WL 74754, *3 (S.D. Ala. Jan. 10, 2012) (stating "the mere payment of claims — even those for which the principal has a valid defense — does not amount to bad faith"); *Amaya v. Garden City Irr., Inc.*, 2011 WL 564721, *3 (E.D.N.Y. Feb. 15, 2011) (explaining that "[i]t is clear, however, that a surety's failure to pursue a viable defense does not suffice" to establish bad faith); *U.S. Fid. & Guar. Co. v. Stanley Contracting, Inc.*, 303 F. Supp. 2d 1169, 1174 (D. Or. 2004) (stating that "[a] surety's decision to proceed with claims despite possible defenses is not credible evidence of bad faith"); *Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Const. Corp.*, 975 F. Supp. 511, 518-19 (S.D.N.Y. 1997) (explaining "[a] decision to proceed with claims despite possible defenses, however, is not evidence of bad faith").

(M.D. Ga. 2006), United States District Court for the Middle District of Georgia held that a substantially similar collateral security provision obligated the principal/indemnitors to deposit collateral with the surety notwithstanding the principal/indemnitors' alleged defenses to the claims at issue and their objections regarding the manner in which the surety was investigating/resolving those claims. Like the collateral security provision in the present case, the collateral security provision in *Conart* stated, "Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, upon demand by the Surety, **as soon as liability exists or is asserted against the Surety**, whether or not the Surety shall have made any payment therefor . . . ." *Id*. at *4 (emphasis in original). Like the Indemnitors in the present case, the principal/indemnitors in *Conart* responded to a motion for preliminary injunction by asserting that they possessed "meritorious defenses to each claim asserted against its bonds and substantial claims for damages against [the obligee under one of those bonds]." *Id*. at 5. The principal/indemnitors in *Conart* also asserted that the surety had "failed to properly consider [the principal's] interests, and exhibited anger and ill-will toward the [principal], its employees and its position." *Id*. Despite the alleged invalidity of the claims at issue in *Conart* and the surety's alleged bad faith investigation, the court entered a preliminary injunction compelling the principal/indemnitors to deposit collateral security with the surety relative to the claims that had been asserted against it. *Id*. at *6-*7.

Other courts have rejected similar arguments when entering preliminary injunctions against principals/indemnitors. The United States District Court of the Eastern District of North Carolina recently entered a preliminary injunction compelling the principal/indemnitors to deposit collateral even though they contested their liability for the underlying claims and asserted that the surety had acted in bad faith during its investigation/resolution of those claims. *See First*

*Nat'l Ins. Co. of Am. v. Sappah Bros., Inc.*, 771 F. Supp. 2d 569 (E.D.N.C. 2011). In fact, that court explained, "[W]hile the issue of whether [the surety] acted in good faith may be relevant to whether defendants ultimately are liable to [the surety] for indemnification under their agreement, **it is irrelevant to whether defendants are required to post collateral security preliminarily**." *Id.* at 547 (emphasis added). The United States District Court for the Middle District of Florida also recently entered a preliminary injunction compelling the principal/indemnitors to deposit collateral with the surety despite their claims that the surety's intentional conduct effectively forced the principal out of business, which allegedly resulted in the assertion of the very claims for which the surety sought collateral. *Kearney Constr. Co., LLC v. Travelers Cas. & Sur. Co. of Am.*, 2010 WL 2803971 (M.D. Fla. July 15, 2010). When enforcing a strikingly similar collateral security provision via specific performance, the United States District Court for the Southern District of Ohio also recently stated, "There is absolutely nothing in the language of the Indemnity Agreement to indicate that the parties intended to condition Defendants' payment of the collateral security on a preliminary assessment of the potential merits of the claims asserted against the Surety in the underlying suit." *Int'l Fid. Ins. Co. v. Vimas Painting Co., Inc.*, 2009 WL 485494 (S.D. Ohio Feb. 26, 2009).

As dictated by these well established principles, STEP and the Indemnitors are required to collateralize International Fidelity pursuant to Paragraph Second of the Indemnity Agreement pending the resolution of International Fidelity's indemnity claim regardless of whether STEP may possess defenses to Dalewood's claim and regardless of whether STEP and the Indemnitors may possess defenses to International Fidelity's claim for indemnification.

**C. STEP's and/or International Fidelity's actual liability to Dalewood is also irrelevant to the duty of STEP and the Indemnitors to indemnify International Fidelity because the Indemnity Agreement requires STEP and the Indemnitors to indemnify International Fidelity for any payments it made in the good faith belief that it was liable for the payments or that it was necessary or expedient to make such payments — <u>whether or not such liability, necessity or expediency actually existed.</u>**

To the extent it is inclined to consider any defenses STEP and the Indemnitors may possess to International Fidelity's indemnity claim while ruling upon International Fidelity's Motion for Preliminary Injunction, the Court should understand that the duty of STEP and the Indemnitors to indemnify International Fidelity is not conditioned upon a determination that STEP was liable to Dalewood or that International Fidelity was actually liable for the payments it made under the Bond. Instead, regardless of STEP's and/or International Fidelity's actual liability to Dalewood or other claimants under the Bond, the Indemnitors are obligated to indemnify International Fidelity for all payments it made under the Bond in the good faith belief that International Fidelity was liable for the payments or that it was necessary or expedient under the circumstances to make such payments — whether or not such liability, necessity or expediency actually existed. Furthermore, this action will not somehow become moot if STEP succeeds on its claims against Dalewood in the Georgia state court action.[2] To the contrary, STEP and the Indemnitors will remain obligated to indemnify International Fidelity even if STEP succeeds on its claims against Dalewood. The Indemnity Agreement provided a mechanism through which STEP and/or the Indemnitors could have required International Fidelity to dispute Dalewood's claim, but STEP and the Indemnitors undisputedly failed to adhere to that procedure. Accordingly, STEP and the Indemnitors have bargained away their right to contest the manner in which International Fidelity resolved Dalewood's claim.

---

[2] This issue is further addressed below in Section II.D.1. of this Memorandum of Law.

Case 3:12-cv-00037   Document 30   Filed 05/15/12   Page 10 of 25   PageID #: 818

More specifically, with respect to the duty of STEP and the Indemnitors to indemnify

International Fidelity, Paragraph SECOND of the Indemnity Agreement provides:

> [STEP] and Indemnitors shall exonerate, indemnify, and keep indemnified [International Fidelity] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which [International Fidelity] may sustain and incur:
>
> > (1) By reason of having executed or procured the execution of the Bonds,
> > (2) By reason of the failure of [STEP] or Indemnitors to perform or comply with the covenants and conditions of this Agreement or
> > (3) In enforcing any of the covenants and conditions of this Agreement.

(Doc. 20-1). With respect the scope of the indemnity obligations of STEP and the Indemnitors,

Paragraph SECOND also provides:

> In the event of any payment by [International Fidelity] [STEP] and Indemnitors further agree that in any accounting between [International Fidelity] and [STEP], or between [International Fidelity] and the Indemnitors, or either or both of them, [International Fidelity] **shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, <u>or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed</u>**. The vouchers or other evidence of any such payment(s) made by [International Fidelity] shall be prima facie evidence of the fact and amount of the liability to [International Fidelity], and of [International Fidelity]'s good faith in making the payment(s). **"Good Faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith**.

(Id.) (emphasis added). With respect to International Fidelity's right to take over and complete

STEP's unfinished work upon Dalewood's default and termination of STEP, Paragraph SIXTH

of the Indemnity Agreement provides:

> In the event of any breach, delay or default **<u>asserted by [Dalewood]</u>** in any said Bonds, or [STEP] has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection

therewith . . . **[International Fidelity] shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of [STEP] and Indemnitors to complete or arrange for the completion of the same, and [STEP] and Indemnitors shall promptly upon demand pay to [International Fidelity] all losses, and expenses so incurred**.

(Id.) (emphasis added). With respect to the procedure through which STEP and the Indemnitors could have required International Fidelity to dispute Dalewood's claim, Paragraph THIRTEENTH of the Indemnity Agreement provides:

**[International Fidelity] shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds**, *unless* [STEP] and the Indemnitors shall demonstrate to [International Fidelity]'s satisfaction that there is a valid basis to dispute said claim, demand, suit or judgment, and shall in good faith request [International Fidelity] to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, **and shall deposit with [International Fidelity], at the time of such request, cash or collateral satisfactory to [International Fidelity] in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of [International Fidelity]**.

(Id.) (emphasis added). Therefore, the Indemnity Agreement clearly and unambiguously articulates (1) the general duty of STEP and the Indemnitors to indemnify International Fidelity, (2) the scope of the duty of STEP and the Indemnitors to indemnify International Fidelity, (3) the right of International Fidelity to take over and complete STEP's work upon Dalewood's declaration of default, (4) the procedure under which STEP and the Indemnitors could require International Fidelity to dispute Dalewood's claim, and (5) International Fidelity's right to settle Dalewood's claim in the event that STEP and the Indemnitors fail to adhere to the procedure for requiring International Fidelity to dispute Dalewood's claim.

As explained in Section II.A. above, the provisions of Paragraph SECOND, Paragraph SIXTH, and Paragraph THIRTEENTH of the Indemnity Agreement are enforceable under

Tennessee law, and these provisions must be enforced according to their plain an unambiguous terms while giving force and effect to every provision — even if they are considered to be harsh and unjust by a court. *U.S. Fid. & Guar. Co.*, 2009 WL 77262 at *3-*4; *Ohio Farmers Ins. Co.*, 2008 WL 5378079 at *16-*17; *Lyndon Prop. Ins. Co.*, 2005 WL 1840254 at *4; *Long*, 221 S.W.3d at 11; *Memphis Hous. Auth.*, 38 S.W.3d at 511. When interpreting and enforcing similar indemnity provisions, takeover provisions, and right to settle provisions, courts throughout the United States have held that a surety's right to be indemnified is not conditioned upon a finding that the principal was actual liability for the sums for which the surety seeks indemnity.[3]

---

[3] *See, e.g., First Nat. Ins. Co. of Am. v. Joseph R. Wunderlich, Inc.*, 144 F. App'x 125, 126-27 (2d Cir. 2005) (holding that "the 'good faith' clause in the indemnity agreement precludes litigation over questions of whether the [principals] were 'actually liable for the payments claimed . . . or actually defaulted on their contracts'"); *Fireman's Ins. Co. of Newark, N.J. v. Todesca Equip. Co.*, 310 F.3d 32, 35-37 (1st Cir. 2002) (recognizing that actual liability was not a determining factor in an indemnity action); *Huffy Corp. v. Arai Indus. Co.*, 187 F.3d 635, *4 (6th Cir. 1999) (stating that "[t]he broad, sweeping language of the indemnity clause leaves little doubt that here the intent of the parties was not to require a determination of actual liability as a prerequisite to indemnification"); *Bainville v. Hess Oil V.I. Corp.*, 837 F.2d 128, 130-32 (3d Cir. 1988) (stating that "[w]e have no trouble concluding that here the intent of the parties was not to require a determination of actual liability as a precondition of the duty to indemnify"); *Commercial Ins. Co. of Newark, N.J. v. Pac.-Peru Const. Corp.*, 558 F.2d 948, 952-53 (9th Cir. 1977) (explaining that principal's focus on validity of underlying claims "miss the mark"); *Hartford Cas. Ins. Co. v. Hyperion Const., LLC*, 2012 WL 74754, *3 (S.D. Ala. Jan. 10, 2012) (noting that "courts have held that 'actual liability is not a prerequisite to a surety's right to reimbursement'" and that "the mere payment of claims — even those for which the principal has a valid defense — does not amount to bad faith"); *The Travelers Indem. Co. v. Harrison Constr. Group Corp.*, 2008 WL 4725970, *2-*4 (E.D.N.Y. Oct. 22, 2008) (rejecting the principal's "lack of default defense" and stating that "any conditions precedent to liability on the underlying bond are irrelevant; indeed, it is irrelevant whether or not [the principal] was in default at all"); *Great Am. Ins. Co. v. Stephens*, 2005 WL 2373866, *6-*8 (E.D. Pa. Sept. 27, 2005) (noting "both the express language of the Indemnity Agreement and the caselaw make it clear that 'actual liability is not a prerequisite to a surety's right to reimbursement'"); *U.S. Fid. & Guar. Co. v. Stanley Contracting, Inc.*, 303 F. Supp. 2d 1169, 1172 (D. Or. 2004) (explaining that the issue of "whether the [obligee] wrongfully terminated [the principal] from the contract is not relevant" to the principal's indemnity obligations); *Frontier Ins. Co. v. Int'l, Inc.*, 124 F. Supp. 2d 1211, 1213-14 (N.D. Ala. 2000) (stating that "the rule in most jurisdictions is that '[a] surety is entitled to reimbursement pursuant to an indemnity contract for any payments made by it in a good faith belief that it was required to pay, regardless of whether any liability actually existed'" and that "actual liability is not a prerequisite to a surety's right to reimbursement"); *Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Const. Corp.*, 975 F. Supp. 511, 515-17 (S.D.N.Y. 1997) (holding that "[i]t is irrelevant whether [the principal] was actually liable for the payments claimed by the subcontractors or actually defaulted on their contracts with the owners, so long as [the surety] acted in good faith in making the payments and completing the performance under the construction contracts"); *Employers Ins. of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1102-03 (S.D. Fla. 1990) (stating that "courts have consistently held that the surety is entitled to reimbursement pursuant to an indemnity contract for any payments made by it in a good faith belief that it was required to pay, regardless of whether any liability actually existed"); *Reliance Ins. Co. v. Romine*, 707 F. Supp. 550, 552-53 (S.D. Ga. 1989) aff'd, 888 F.2d 1344 (11th Cir. 1989) (explaining that "[w]hether the amount paid to the claimants was erroneous is, therefore, irrelevant"); *Cont'l Cas. Co. v. Guterman*, 708 F. Supp. 953, 954 (N.D. Ill. 1989) (holding that "even if [the surety] paid off debts for which [the principal] was not liable, the indemnity

That is the rule that should be applied under Tennessee law. For example, by approvingly citing the iconic case of *Fid. & Dep. Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160 (4th Cir. 1983), the Tennessee Court of Appeals has acknowledged that similar indemnity agreements impose a duty upon the principal/indemnitors to indemnify the surety even if the principal's actual liability does not exist or has not been established. *See, Feld Truck Leasing, Div. of Gelco Corp. v. ABC Transnational Transp. Co.*, 681 S.W.2d 554, 555-

contract entitles [the surety] to full reimbursement"); *Fireman's Fund Ins. Co. v. Nizdil*, 709 F. Supp. 975, 976-77 (D. Or. 1989) (stating that "[a]ny claim asserted against the surety, regardless if it is valid or outside the scope of the bond triggers the obligation to indemnify the surety"); *U.S. for Use of Int'l Broth. of Elec. Workers Local No. 449, Eighth Dist. Elec. Pension Fund v. United Pac. Ins. Co.*, 697 F. Supp. 378, 380-81 (D. Idaho 1988) (noting that "upon the express terms of the Agreement, the Indemnitors are liable to indemnify [the surety] no matter what the legal defenses or other avenues of resolution may have been"); *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 838 A.2d 135, 145-47 (Conn. 2004) (stating that "a surety typically has wide discretion in settling claims made upon a bond, even where the principal is not liable for the underlying claim"); *Thurston v. Int'l Fid. Ins. Co.*, 528 So. 2d 128, 128-29 (Fla. Dist. Ct. App. 1988) (recognizing that "[a] surety is entitled to reimbursement pursuant to an indemnity contract for any payments made by it in a good faith belief that it was required to pay, regardless of whether any liability actually existed"); *Martin v. Lyons*, 558 P.2d 1063, 1065-67 (Idaho 1977) (holding that principal liable to reimburse surety for payments made in good faith regardless of principal's actual liability); *Lamp, Inc. v. Int'l Fid. Ins. Co.*, 493 N.E.2d 146, 148-49 (Ill. Ct. App. 1986) (holding that the surety's "right to indemnification arose immediately upon Lamp's claim regardless of defendant's liability on the underlying claim"); *Ulico Cas. Co. v. Atl. Contracting & Material Co.*, 822 A.2d 1257, 1265-70 (Md. Ct. App. 2003) (holding that the surety "was entitled to reimbursement from [principal] for a claim [the surety] paid in good faith, without fraud, regardless of whether [the surety] was actually liable for the claim — either by virtue of a defense of [the principal] to the claim or by virtue of the claim's being outside the scope of the Bond"); *Fid. & Deposit Co. of Maryland v. Fleischer*, 772 S.W.2d 809, 815-17 (Mo. Ct. App. 1989) (stating that the surety's "right to reimbursement is not dependent upon a determination that it was, in fact and in law, liable for losses under the bonds"); *Maryland Cas. Co. v. Spitcaufsky*, 178 S.W.2d 368, 371 (Mo. 1944) (stating that "[t]he indemnity agreement authorized respondent to make settlement if it deemed itself liable, whether or not such liability in fact existed, and authorized it to make settlement without even notifying [the indemnitors]"); *Lee v. T.F. DeMilo Corp.*, 815 N.Y.S.2d 700, 701 (2006) (explaining that "the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount, and this rule applies regardless of whether the principal was actually in default or liable under its contract with the obligee"); *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 784 N.Y.S.2d 698, 698-99 (N.Y. App. Div. 2004) (noting that the determination of whether the principal was in default "is irrelevant to liability under the indemnity agreement"); *Int'l Fid. Ins. Co. v. Spadafina*, 192 A.D.2d 637, 638-39 (N.Y. App. Div. 1993) (stating that "it is irrelevant whether [the principal] was actually liable on the underlying debt to [the payment bond claimant]"); *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 281-82 (Tex. App. 1992) (stating that "[u]nder these provisions, whether [the surety] was liable on the bond makes no difference" and that "[the surety] could have determined that it was 'expedient' to settle . . . even without a trial . . . ."); *Hess v. Am. States Ins. Co.*, 589 S.W.2d 548, 550-51 (Tex. Civ. App. 1979) (holding that a jury's verdict in the principal's favor as to the obligee's claim did not relieve the principal of its indemnity obligations and explaining that "[a]n actual default by [the principal] on the construction contracts resulting in liability on the performance bonds is not a condition precedent to the bonding companies' right of recovery on the indemnity agreement"); *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693, 698 (Tex. Civ. App. 1965) (stating, "Whether the surety or his principal are or are not liable on the bond which was paid by the surety is immaterial. In this case recovery of the amounts paid by [the surety] in connection with the performance and payment bonds is not dependent upon whether it is legally liable on the same.").

556 (Tenn. Ct. App. 1984) (citing *Bristol Steel* and recognizing the existence of "a duty to reimburse the indemnitee even where liability does not exist or has not been established"). Like the Indemnity Agreement in the present case, the indemnity agreement at issue in *Bristol Steel* obligated the principal and indemnitors to indemnify the surety for:

> any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement **under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, <u>whether or not such liability, necessity or expediency existed</u>**.

722 F.2d at 1163 n.5 (emphasis added). When the Pennsylvania Department of Transportation ("PennDOT") asserted a performance bond claim, the surety initially denied the claim in reliance upon defenses the principal purportedly possessed. *Id*. at 1164. PennDOT subsequently disqualified the surety from issuing bonds in Pennsylvania. *Id*. After being "blacklisted," the surety paid PennDOT's claim, though the surety expressly reserved the principal's right to later sue PennDOT. *Id*. The Fourth Circuit focused upon the indemnity language emphasized above while holding that the principal was required to indemnify the surety for its payment to PennDOT regardless of the principal's actual liability to PennDOT. *Id*. at 1163-61. The court explained that the emphasized language constituted a vast departure from the common law of indemnity, which requires a surety to establish its principal's actual liability, and that such language "has been uniformly sustained and upheld." *Id*. at 1163. The court also noted that the only exception to the enforcement of such language "arises when the payment has been made 'through fraud or lack of good faith' on the part of the surety but any challenge to such payment must be rested solely on that claim of bad faith or fraud." *Id*. The court also held that the surety's payment to PennDOT was not made in bad faith, even though the surety was motivated to make the payment to remove its name from PennDOT's "blacklist." *Id*. at 1166.

The applicability of the general rule under Tennessee law is also evidenced by the Tennessee Court of Appeal's approving citation of *Massachusetts Bonding & Ins. Co. v. Gautieri*, 30 A.2d 848 (R.I. 1943) (*See, Feld Truck Leasing*, 681 S.W.2d at 555-556 (citing *Gautieri* and recognizing the existence of "a duty to reimburse the indemnitee even where liability does not exist or has not been established"). In *Gautieri*, the indemnity agreement required the principal and indemnitors to indemnify the surety for any payments "made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, *whether such liability, necessity or expediency existed or not.*" *Gautieri*, 30 A.2d at 850 (emphasis in original). Like STEP in the present case, the principal in *Gautieri* adamantly disputed the obligee's claim, advised the surety it possessed evidence refuting the claim, and objected to the surety's settlement of the obligee's claim. *Id*. at 849-50. The Rhode Island Supreme Court focused on the emphasized language above and held:

> This last clause which we have emphasized by italics is indeed of a most sweeping character. As we read it, especially in the light of all that precedes it, we are confronted with the well-nigh inescapable conclusion that the parties to this bond have lodged in the indemnitee a discretion **limited only by the bounds of fraud**. In other words, unless it could be shown that such loss as the indemnitee suffered in the instant case was the result of fraud on its part, or of collusion between it and the agents of the United States, which would be the same thing as fraud, these defendants would be foreclosed by the very terms of the bond from claiming that the plaintiff had not acted in good faith in settling the government's claim despite defendants' prior refusal to consent to such settlement.

*Id*. at 850 (emphasis added).

As dictated by these principles, STEP's actual liability to Dalewood or other bond claimants is irrelevant to the duty of STEP and the Indemnitors to indemnify International Fidelity for all sums it expended in the good faith belief that it was liable for the payments or that

it was necessary or expedient to make such payments — whether or not such liability, necessity or expediency existed. The Indemnity Agreement expressly defines "good faith" as "honesty in fact and the absence of willful misfeasance or malfeasance." (Doc. 20-1). The Indemnity Agreement also clarifies that "[n]either negligence nor gross negligence shall be deemed the absence of good faith." (Id.). International Fidelity also possessed the express contractual right to take over and complete STEP's unfinished work under the Bonded Contract since it is undisputed that Dalewood asserted that STEP was in default under the Bonded Contract and it is undisputed that STEP failed to pay certain of its subcontractors and suppliers under the Bonded Contract.[4]

International Fidelity also possessed the right to settle Dalewood's claim because STEP and the Indemnitors undisputedly failed to deposit collateral with International Fidelity relative to Dalewood's claim, which was a condition precedent to International Fidelity's duty to dispute Dalewood's claim. The failure to deposit collateral with International Fidelity precludes STEP and the Indemnitors from second guessing the manner in which International Fidelity resolved Dalewood's claim. *Fid. & Dep. Co. of Md. v. D.M. Ward Constr. Co.*, 2008 WL 2761314, *2-*3 (D. Kan. July 14, 2008) (interpreting similar right to settle clause and noting that "defendants bargained away the right to contest how plaintiff handled claims upon the bonds unless they were willing to post collateral satisfactory to plaintiff"); *Reliance Ins. Co. v. Moberroy Jones, Ltd.*, 1986 WL 11474, *1-*3 (Tenn. Ct. App. 1986) (holding that surety was authorized to settle claim where principal failed to post collateral with surety); *Nat'l Sur. Corp. v. Buckles*, 219

---

[4] STEP and the Indemnitors assert that a condition precedent to International Fidelity's right to take over and complete STEP's unfinished work was not satisfied under Paragraph SIXTH of the Indemnity Agreement because Dalewood did not take the steps that were necessary to properly default and terminate STEP. However, International Fidelity's rights under Paragraph SIXTH of the Indemnity Agreement were triggered as soon as Dalewood "asserted" that STEP was in default, regardless of whether STEP was actually in default under the Bonded Contract. Any other interpretation would ignore the phrase "[i]n the event of any breach, delay or default **asserted** by [Dalewood] . . . ." STEP also undisputedly failed to pay some of its subcontractors/suppliers.

S.W.2d 207, 207-210 (Tenn. Ct. App. 1948) (noting the enforceability of a similar right to settle provision and stating "[e]ven in the absence of contract a Surety is under no absolute requirement to submit to litigation and consequent possible increase of loss"); *Fid. & Deposit Co. of Maryland v. Fleischer*, 772 S.W.2d 809, 815-817 (Mo. Ct. App. 1989) (holding that surety had right to seek sums it paid to settle bond claims regardless of principal's actual liability where indemnitors failed to take steps necessary to require surety to dispute claims).

Therefore, STEP's actual liability to Dalewood is absolutely irrelevant to the duty of STEP and the Indemnitors to indemnify International Fidelity under the Indemnity Agreement. The purported defenses to STEP and the Indemnitors to International Fidelity's indemnity claim are not only irrelevant to International Fidelity's Motion for Preliminary Injunction, but those purported defenses also lack merit.

**D. International Fidelity has satisfied the 4-part test for the issuance of a preliminary injunction compelling STEP and the Indemnitors to collateralize International Fidelity in relation to the liability that Dalewood has asserted against it.**

**1. Likelihood of Success on the Merits of Claim for Specific Performance**

As explained in Section IV.A. of International Fidelity's initial Memorandum of Law (Doc. 19), International Fidelity will likely succeed on its claim for specific performance of STEP's and the Indemnitors' duty to collateralize International Fidelity under Tennessee law because International Fidelity lacks an adequate remedy at law in relation to their failure to collateralize International Fidelity.

The first issue STEP and the Indemnitors have raised with respect to this prong of the 4-part test is International Fidelity's alleged failure to reasonably investigate Dalewood's claim. International Fidelity has demonstrated that this issue is irrelevant to the duty of STEP and the Indemnitors to collateralize International Fidelity in Section II.B. of this Memorandum of Law.

The second issue STEP and the Indemnitors have raised on this prong of the 4-part test is the pendency of STEP's claims against Dalewood and International Fidelity in the Georgia state court, in which STEP's actual liability or non-liability to Dalewood may ultimately be determined. However, as explained in detail above, STEP's actual liability or non-liability to Dalewood is irrelevant to the duty of STEP and the Indemnitors to collateralize and indemnify International Fidelity under the Indemnity Agreement.

In fact, courts have required principals and indemnitors to indemnify sureties even where the principals obtained rulings (in the same or a separate action) that the principals were not actually liable to the obligees and/or bond claimants. For example, in *U.S. Fid. & Guar. Co. v. Jones*, 87 F.2d 346 (5th Cir. 1937), the United State Court of Appeals for the Fifth Circuit held that an indemnitor was obligated to indemnify the surety for the sum it paid to settle a bond claim during the pendency of litigation between the principal and the bond claimant, even though the pending litigation resulted in a determination that the bond claim was invalid. The court explained:

> The liability of [the indemnitor] not being confined to that of a principal to his surety, but also being on the special undertaking of the indemnity contract, the conclusiveness of the judgment entered in the state court upon the question of the ultimate liability of the principal on the claims there asserted **has no bearing on the liability of appellee in this action. The adjudication in the state court, discharging appellant from the claims there asserted against it, did not adjudicate any question which might arise under the special undertaking of indemnity as distinguished from that resulting from a contract of suretyship**. The subject-matter was entirely different, and there is no ground for application of the doctrine of estoppel by judgment or res judicata.

*Id*. (emphasis added). Similarly, in *Hess v. Am. States Ins. Co.*, 589 S.W.2d 548 (Tex. Civ. App. 1979), the Texas Court of Appeals affirmed a trial court's award of judgment in the sureties' favor in relation to sums they paid to complete the principal's unfinished work, even though the

jury determined in the same action that the principal had not actually breached the bonded

contract. The court explained:

> The jury found four issues favorable to [the principal]. These findings are set
> forth above. In essence, the jury determined that [the principal] did not fail to
> perform the construction contracts according to their terms and conditions and
> that $5,000 was a reasonable amount to repair the street in question. **The jury's
> verdict on these issues does not establish any defense to the bonding
> companies' action on the indemnity agreement.** An actual default by [the
> principal] on the construction contracts resulting in liability on the performance
> bonds is not a condition precedent to the bonding companies' right of recovery on
> the indemnity agreement.

*Id.* at 551 (emphasis added). Therefore, International Fidelity's specific performance claim and

International Fidelity's indemnity claim are ripe for adjudication notwithstanding the pendency

of the Georgia state court action, and this action is the only action in which the Indemnitors have

been named. Because the Federal Government and the State of Georgia are separate sovereigns,

the pendency of the Georgia State Court action in no way impedes this Honorable Court's ability

to grant the relief that International Fidelity is requesting. *City of Ironton v. Harrison Const.

Co.*, 212 F. 353, 355 (6th Cir. 1914) (explaining that "a prior suit pending in a state court will not

abate a later suit in a federal court, even if between the same parties upon the same issue, and

even if the two courts are in the same district of the same state"). The pendency of the Georgia

state court action also does not in any way impact the likelihood of International Fidelity's

success on the merits of its claim for specific performance of STEP's and the Indemnitors' duty

to collateralize International Fidelity.

The final issue STEP and the Indemnitors have raised with respect to this prong of the 4-

part test is the another iteration of their argument that STEP was not properly terminated and that

International Fidelity did not properly investigate STEP's purported defenses. As explained in

Sections II.A. and II.B. above, the propriety of Dalewood's termination of STEP and the

reasonableness of International Fidelity's investigation of STEP's purported defenses are irrelevant to the duty of STEP and the Indemnitors to collateralize International Fidelity, and the first prong of the 4-part test for the issuance of a preliminary injunction has been satisfied.

### 2. Irreparable Harm

As explained in Section IV.B. of International Fidelity's initial Memorandum of Law (Doc. 19), International Fidelity will continue to suffer irreparable harm if STEP and the Indemnitors are not compelled to deposit collateral because it will continue to be deprived of its bargained-for right to receive and hold collateral pending the resolution of the liability that has been asserted against it.

In addition to the unsubstantiated bad faith allegations that have been addressed above, the first issue STEP and the Indemnitors have raised with respect to this prong of the 4-part test is the assertion that International Fidelity has wrongfully obtained the right to receive the remaining balance of the Bonded Contract through its negotiation of a Takeover Agreement with Dalewood. However, pursuant to Paragraph THIRD of the Indemnity Agreement, STEP and the Indemnitors had already assigned, transferred, and set over to International Fidelity, as collateral for their indemnity obligations, their right to "[a]ny and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest." Consequently, International Fidelity also possessed the right to receive the balance of the Bonded Contract, and International Fidelity's act of obtaining confirmation of that right from Dalewood in the Takeover Agreement does not in any way impact the duty of STEP and the Indemnitors to collateralize International Fidelity.

The remaining issues STEP and the Indemnitors have raised with respect to this prong of the 4-part test can be summarized as additional complaints about the manner in which International Fidelity opted to resolve Dalewood's claim. As explained in Section II.B. above, the purported defenses that STEP and the Indemnitors may possess to International Fidelity's indemnity claim are irrelevant to their duty to collateralize International Fidelity. International Fidelity's current lack of collateral, in and of itself, constitutes irreparable harm, and the second prong of the 4-part test for the issuance of a preliminary injunction has been satisfied.

### 3. Balance of the Equities

As explained in Section IV.C. of International Fidelity's initial Memorandum of Law (Doc. 19), the balance of the equities weighs in International Fidelity's favor because (1) International Fidelity is merely seeking to enforce the terms of the Indemnity Agreement to which STEP and the Indemnitors voluntarily agreed and (2) International Fidelity would continue to be forced to use its own funds to resolve the liability that Dalewood asserted against it absent the entry of an injunction.

The issues STEP and the Indemnitors have raised as to this prong of the 4-part test can be summarized as additional allegations that Dalewood improperly terminated STEP and additional complaints about the manner in which International Fidelity opted to resolve Dalewood's claim. Neither STEP nor the Indemnitors have asserted that they are financially unable to deposit the requested collateral with International Fidelity. If STEP and/or the Indemnitors wanted International Fidelity to dispute Dalewood's claim, the Indemnity Agreement provided a procedure through which they could have done so. STEP and the Indemnitors undisputed failed to adhere to that procedure, which negates their ability to second guess International Fidelity's actions under the guise of balancing the equities. *Nat'l Sur. Corp. v. Buckles*, 219 S.W.2d 207,

207-210 (Tenn. Ct. App. 1948) (noting the enforceability of a similar right to settle provision and stating "[e]ven in the absence of contract a Surety is under no absolute requirement to submit to litigation and consequent possible increase of loss"). In reality, each of International Fidelity's actions was expressly authorized by the Indemnity Agreement.

Accordingly, equity dictates that STEP and the Indemnitors be compelled to perform their contractual duty to collateralize International Fidelity pending the resolution of their purported defenses to International Fidelity's indemnity claim. In other words, STEP and the Indemnitors will eventually be entitled to assert their purported defenses to International Fidelity's indemnity claim, but International Fidelity is contractually and equitably entitled to the possession and the utilization of collateral in the amount of its total reserve pending the determination of International Fidelity's indemnity claim. International Fidelity has satisfied the third prong of the 4-part test for the issuance of a preliminary injunction.

### 4. Public Interests

As explained in Section IV.D. of International Fidelity's initial Memorandum of Law (Doc. 19), compelling STEP and the Indemnitors to deposit collateral security with International Fidelity would strengthen the public interest of enforcing the clear and unambiguous terms of written indemnity agreements, while instilling confidence in the surety industry.

The issues STEP and the Indemnitors have raised on this prong of the 4-part test can be summarized as additional allegations that Dalewood improperly terminated STEP and additional complaints about the manner in which International Fidelity opted to resolve Dalewood's claim. International Fidelity reiterates that each of its actions was expressly authorized by the Indemnity Agreement, and STEP and the Indemnitors failed to avail themselves of the opportunity to require International Fidelity to dispute Dalewood's claim. Refusing to compel STEP and the

Indemnitors to fulfill their collateral obligations to International Fidelity under these circumstances would likely make sureties reluctant to issue bonds that may be governed by Tennessee law because those sureties would seemingly risk their collateral rights by exercising the very options for which they bargained in their indemnity agreements. Such a result would not be in the public's interest, and International Fidelity has satisfied the third prong of the 4-part test for the issuance of a preliminary injunction.

## III. CONCLUSION

For the foregoing reasons, International Fidelity respectfully moves the Court to enter a preliminary injunction compelling STEP and the Indemnitors to deposit collateral security with International Fidelity in the amount of $427,556.46, which equals the amount of International Fidelity's total reserve in relation to the liability that has been asserted against it under the Bond.

Respectfully submitted,

_/s/ Jarrod W. Stone_
Jeffrey S. Price      BPR No. 019550
Jarrod W. Stone      BPR No. 023915
MANIER & HEROD
One Nashville Place, Suite 2200
150 Fourth Avenue North
Nashville, Tennessee 37219
Phone: (615) 244-0030
Fax: (615) 242-4203
jprice@manierherod.com
jstone@manierherod.com
Attorneys for International Fidelity Insurance Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 15th day of May, 2012, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ Jarrod W. Stone